## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE LISA W. WANG, JUDGE

| | | |
|---|---|---|
| GOVERNMENT OF ISRAEL, MINISTRY OF ECONOMY AND INDUSTRY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Court No. 24-00197 |
| | : | |
| UNITED STATES, | : | **Non-Confidential Version** |
| | : | Business Proprietary |
| Defendant, | : | Information has been |
| | : | removed from pages |
| | : | 7-8, 11-15, 18, and |
| | : | 20-23. |
| and | : | |
| | : | |
| AMERICAN BRASS ROD FAIR TRADE COALITION, et al., | : | |
| | : | |
| Defendant-Intervenor. | : | |

## PLAINTIFF'S REPLY BRIEF IN SUPPORT OF ITS RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................1

ARGUMENT .....................................................................................................2

I.     THE COMMISSION'S FINAL DETERMINATIONS ARE NOT SUPPORTED
BY SUBSTANTIAL EVIDENCE OR OTHERWISE NOT IN ACCORDANCE
WITH LAW ...............................................................................................2

     A.     The Commission Unlawfully Ignored Record Evidence Regarding the
Hamas War.........................................................................................2

          1.     The Commission Did Not Adequately Consider the Hamas Attack ...........3

          2.     The Commission Must Address Significant Events Between the
End of the POI and the Vote Date .................................................4

          3.     The Commission and Interested Parties Raised the War in the
Context of Present Material Injury .................................................5

     B.     The Commission's Volume Analysis Was Unsupported by Substantial
Evidence and Otherwise Not in Accordance with Law ...........................6

          1.     Defendant Does Not Dispute That Plaintiff's Import Volumes and
Increased Volumes Were Small.....................................................7

          2.     The Commission Was Required to Address *Pipe Fittings* ..........................8

          3.     Defendant's Interpretation of "Significant" Contravenes the Statute .........8

     C.     The Commission's Pricing Analysis Was Unsupported by Substantial
Evidence and Otherwise Not in Accordance with Law ...........................10

          1.     Defendant Did Not Address the Deficiencies in the Commission's
Determinations Regarding Price Adjustments ...........................................10

          2.     Defendant Misconstrues the Record Regarding the Insignificant
Volume of Alleged Lost Sales...................................................14

          3.     Defendant Did Not Address Critical Deficiencies in the
Commission's Price Effects Analysis .......................................15

     D.     The Commission's Determination of Negative Impact from the Israeli-
Origin Subject Imports Is Not Supported by Substantial Evidence.....................16

          1.     Defendant Did Not Address Plaintiff's Arguments....................................17

**NON-CONFIDENTIAL VERSION**

2.    Defendant's Arguments Regarding the Small Change in Market Share Lack Merit.................................................................................17

3.    The Domestic Industry's Profitability Proves its Strong Operational and Financial Performance.......................................19

4.    Defendant's Arguments about the Domestic Industry's Profitability Lack Context............................................................19

E.    The Commission Improperly Attributed Changes in the Domestic Industry's Performance to Subject Imports from Israel...........................................20

1.    Defendant Simply Repeats the Commission's Conclusions Regarding the Domestic Industry's Supply Constraints...........................21

2.    Defendant Does Not Address the Commission's Failure to Differentiate Impact on the Domestic Industry by Israeli-Origin Subject Imports from Other Subject Imports................................................22

II.    CONCLUSION.................................................................................23

NON-CONFIDENTIAL VERSION

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*AWP Indus., Inc. v. United States*, 783 F. Supp. 2d 1266 (Ct. Int'l Trade 2011) ........................... 5

*Bratsk Aluminum Smelter v. United States*, 28 Ct. Int'l Trade 955 (2004) .................................... 4

*Burlington Truck Lines v. United States*, 371 U.S. 156 (1962) .................................................... 16

*CP Kelco, Inc. v. United States*, 949 F.3d 1348 (Fed. Cir. 2020) .................................................. 9

*Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1 (2020) ........................ 9

*Mitsubishi Materials Corp. v. United States*, 820 F. Supp. 608 (Ct. Int'l Trade 1993) ................. 4

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) ......
.........................................................................................................................................................11, 16

*Neimenggu Fufeng Biotechs. Co. v. United States*, 741 F. Supp. 3d 1354 (Ct. Int'l Trade 2024) ....
.......................................................................................................................................................... 7, 21

*Nippon Steel Corp. v. United States*, 337 F.3d 1373 (Fed. Cir. 2003) ............................... 1, 17, 19

*Nippon Steel Corp. v. United States*, 458 F.3d 1345 (Fed. Cir. 2006) ........................................... 1

*Qingdao Sea-Line Trading Co. v. United States*, 766 F.3d 1378 (Fed. Cir. 2014) ....................... 16

*Royal Thai Gov't v. United States*, 502 F. Supp. 2d 1334 (Ct. Int'l Trade 2007) .................... 8, 13

*Universal Camera Corp. v. NLRB*, 340 U.S. 474 (1951) ............................................................... 1

*Usinor v. United States*, 26 Ct. Int'l Trade 767 (2002) .................................................................. 4

**STATUTES**

19 U.S.C. § 1516a(b)(2)(A)(i) .............................................................................................. 1, 2, 3

19 U.S.C. § 1671d(b)(1)(A) ........................................................................................................... 4

19 U.S.C. § 1677(7)(C) ............................................................................................................. 3, 4

19 U.S.C. § 1677(7)(C)(iii)(V) ...................................................................................................... 2

**OTHER AUTHORITIES**

S. Rep. No. 752, 79th Cong., 1st Sess. 28 ..................................................................................... 1

**ADMINISTRATIVE DECISIONS**

*Certain Carbon Steel Butt-Weld Pipe Fittings from France, India, Israel, Malaysia, the Republic
of Korea, Thailand, the United Kingdom, and Venezuela*, Inv. No. 701-TA-360 and 361 and
731-TA-688-695 (Final), USITC Pub. 2870 (Apr. 1995) ......................................................... 6

*Galvanized Steel Wire from China and Mexico*, Inv. Nos. 701-TA-479 and 731-TA-1183-1184
(Final), USITC Pub. 4323 (May 2012) ...................................................................................... 5

*Glass Containers from China*, Inv. No. 701-TA-630 (Final), USITC Pub. 5068 (June 2020) ..... 13

*Sodium Hexametaphosphate From China*, Inv. No. 731-TA-1110 (Final), USITC Pub. 3984 (Mar.
2008) ......................................................................................................................................... 5

NON-CONFIDENTIAL VERSION

## INTRODUCTION

Defendant dodges Plaintiff's substantive arguments showing that the Commission did not consider the entire record in its final determinations. Instead, Defendant repeatedly asks the Court to defer to the Commission's flawed methodologies and accuses Plaintiff of asking the Court to reweigh the evidence. Def. Br. 15.[1]

Contrary to Defendant's repeated requests for rubber-stamp approval, the Court has an obligation under the substantial evidence standard "to determine . . . in the exercise of {its} independent judgment, whether on the whole record the evidence in a given instance is sufficiently substantial to support a finding."[2] *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 484 n.17 (1951) (quoting S. Rep. No. 752, 79th Cong., 1st Sess. 28, at 30-31); *accord Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351–52 (Fed. Cir. 2006). The Court "is not barred from setting aside {the Commission's} decision when it cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to {the Commission's} view." *Universal Camera*, 340 U.S. at 488. Consistent with these principles, the Court must determine whether the Commission has based its decisions on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003) (internal quotation marks and citation omitted).

As Plaintiff explained in its opening brief and confirms below, the Commission utterly failed to address numerous aspects of the record that detract from its conclusions. Had the

---

[1] Throughout its response brief, Defendant-Intervenor raises arguments that mirror those raised by Defendant in its response brief. *See generally* Def.-Int. Br. Our arguments below therefore address the claims raised in both briefs.

[2] The "record" means "all information presented to or obtained by . . . the Commission during the course of the administrative proceeding . . . ." 19 U.S.C. § 1516a(b)(2)(A)(i).

1

NON-CONFIDENTIAL VERSION

Commission properly considered the record as a whole, no reasonable mind would have determined that an industry was materially injured or threatened with material injury by reason of subject imports from Israel.

## ARGUMENT

I.  **The Commission's Final Determinations Are Not Supported by Substantial Evidence or Otherwise Not in Accordance with Law**

    A.  **The Commission Unlawfully Ignored Record Evidence Regarding the Hamas War**

The Commission unlawfully disregarded information that was critical to its material injury determinations: the war with Hamas that began days after the end of the period of investigation ("POI"), but well before briefing, the public hearing, and the Commission's vote. Pl. Br. 13. The war impacted the conditions of competition by affecting the operations of the only Israeli producer of subject merchandise *and* the condition of the domestic injury at the time of the Commission's determinations. *Id*. "The war significantly reduced production hours by the only Israeli producer of subject merchandise, resulting in decreased capacity to export subject merchandise" and "increased Israeli demand for brass rod, which has military uses." *Id*. at 14-15 (citation omitted). The Commission was required to consider this evidence, not just because it was "information presented to" the Commission during the proceeding (19 U.S.C. § 1516a(b)(2)(A)(i)), but also because it bore directly on the conditions of competition in the U.S. market during the POI, one of the factors that the Commission must consider in its analysis (19 U.S.C. § 1677(7)(C)(iii)(V)).

The Commission's determinations on this issue suffered from two legal deficiencies. First, the Commission failed to consider an important aspect of the problem by not assessing this evidence in the context of conditions of competition, as required by the statute. Pl. Br. 14-15; 19 U.S.C. § 1677(7)(C)(iii)(V). Second, the Commission failed to consider significant events that occurred after the POI in reaching present material injury determinations. Pl. Br. 15-16.

NON-CONFIDENTIAL VERSION

Defendant raises three arguments in support of its decision to not consider the record evidence on the impact of the war in its material injury analysis.  None of them are persuasive.

### 1.    The Commission Did Not Adequately Consider the Hamas Attack

Defendant argues that the Commission's passing reference to the Hamas attack in its discussion of supply constraints affecting various market participants shows that the Commission did not ignore this crucial record evidence in its material injury analysis.   Def. Br. 15-16. Defendant also concedes that it did not consider the war in any part of its substantive analysis, asserting for the first time that it would have addressed the war in a threat analysis, if needed.  *Id.* at 15-18.

Contrary to Defendant's argument, a single passing reference to the war in the conditions of competition section does not amount to a merits analysis of the impact of the war on each of the statutory factors.  In fact, the Commission's acknowledgement that the war is a relevant condition of competition confirms that the Commission was required to consider this record evidence as part of its analysis.  19 U.S.C. § 1677(7)(C) ("The Commission shall evaluate all relevant economic factors described in this clause within the context of the business cycle and conditions of competition that are distinctive to the affected industry.");  *id.*  § 1516a(b)(2)(A)(i)  (defining "record" as "all information presented to the Commission").

This deficiency permeates each segment of the Commission's analysis.  For example, the record indicates that the timing of the war should have significantly impacted the Commission's consideration of subject import volumes before the vote day.  *E.g.*, Finkelstein Posthearing Brief at 25-28, Exh. 9, C.R. 210/P.R. 151.   Nonetheless, the Commission did not include a single reference to the war in its volume analysis, which would have contradicted its conclusion that subject import volumes from Israel were significant.  The Commission "cannot simply ignore

significant contradictory evidence and assert that, nevertheless, its determination was supported by substantial evidence." *Mitsubishi Materials Corp. v. United States*, 820 F. Supp. 608, 624 (Ct. Int'l Trade 1993).  By failing to even reference the war, the Commission's volume analysis could not have "evaluate{d} all relevant economic factors described in this clause within the context of the business cycle and conditions of competition that are distinctive to the affected industry," as required by law.  19 U.S.C. § 1677(7)(C).  The Commission's pricing and impact analyses suffer from the same deficiency and provide a separate basis for remand.

## 2. The Commission Must Address Significant Events Between the End of the POI and the Vote Date

Defendant next argues that it was required to address only information from the POI.  Def. Br. 15-16.  Defendant further asserts that earlier decisions, concerning the consideration of post-POI events, are "inapposite."  *Id.* at 16.  Both assertions are incorrect.

This Court has confirmed that the Commission has discretion to establish the POI.  *Bratsk Aluminum Smelter v. United States*, 28 Ct. Int'l Trade 955, 961-62 (2004).  However, the Commission may not "employ its discretion to blind itself to evidence that may materially impact its imposition of remedial duties."  *Usinor v. United States*, 26 Ct. Int'l Trade 767, 779 (2002). The statute requires the Commission to make a finding of present material injury, which may require consideration of events after the end of the POI.  *See* 19 U.S.C. § 1671d(b)(1)(A) (requiring the Commission to determine whether the domestic injury "*is* materially injured" (emphasis added)).  As the Court in *Bratsk* explained in the context of a final injury investigation, "{t}he statute . . . does not direct the {Commission} to use a specific period of time for its analysis . . . {but} 'in making a present material injury determination, the Commission must address record evidence of significant circumstances and events that occur between the petition date *and vote date*.'"  *Bratsk*, 28 Ct. Int'l Trade at 961-962 (emphasis added) (cleaned up).  Thus, while the

Commission is not required to extend its analysis of data trends to periods outside of the POI, it must address "significant circumstances and events that occur between the petition date and vote date," a fact pattern not confronted in *AWP Industries*, a decision cited by Defendant. Def. Br. 16 (citing *AWP Indus., Inc. v. United States*, 783 F. Supp. 2d 1266, 1282 (Ct. Int'l Trade 2011)). The Commission has routinely incorporated *Bratsk* (and *Usinor*) in final injury determinations, leaving no doubt that it must address "significant circumstances and events that occur between the petition date and vote date." *See, e.g.*, *Sodium Hexametaphosphate From China*, Inv. No. 731-TA-1110 (Final), USITC Pub. 3984 at 8, n.49 (Mar. 2008); *Galvanized Steel Wire from China and Mexico*, Inv. Nos. 701-TA-479 and 731-TA-1183-1184 (Final), USITC Pub. 4323 at 17, n.107 (May 2012).

### 3. The Commission and Interested Parties Raised the War in the Context of Present Material Injury

Finally, Defendant contends that the parties "recognized in their arguments to the Commission that the October 7 attack and Gaza war were relevant only to the Commission's analysis of threat of material injury." Def. Br. 16-17. Yet, interested parties repeatedly raised the war in the context of present material injury during the hearing and briefing. For example, as Plaintiff explained before the Commission, "{t}he ongoing conflict significantly constrains the capacity of many Israeli manufacturers, including Finkelstein Metals, placing a clear restraint on exports to the United States that prevents Israeli exports from materially injuring the U.S. brass rod industry." Prehearing Statement of Government of Israel at 5-6, P.R. 121.[3] Moreover, Finkelstein explained that "subject imports from Israel alone did not cause material injury or threaten to cause material injury to the domestic industry" because "the ongoing war" is one of "several factors {that} constrain the capacity and production of brass rod in Israel." Hearing Tr.

---

[3] Defendant-Intervenors attempt to distract the Court with its own views on Plaintiff's participation before the Commission. Def.-Int. Br. 2. Those views have no bearing on the merits.

at 146, 149, P.R. 135.  Thus, the impact of the war was an issue front-and-center before the Commission, and the Commission unlawfully failed to grapple with it.

**B.    The Commission's Volume Analysis Was Unsupported by Substantial Evidence and Otherwise Not in Accordance with Law**

The Commission's volume analysis is unsupported by substantial evidence because the increase in subject import volumes was minor, both in absolute terms and relative to apparent U.S. consumption and domestic production, such that "a reasonable mind would not accept the facts on the record as 'adequate to support {its} conclusion.'"  Pl. Br. 17-19 (citation omitted).  The Commission's determinations were not in accordance with law for three reasons.  First, the Commission did not explain its basis for treating subject imports from Israel in these investigations differently from previous, similar cases involving subject imports from Israel.  *Id.* at 18-20 (citing *Certain Carbon Steel Butt-Weld Pipe Fittings from France, India, Israel, Malaysia, the Republic of Korea, Thailand, the United Kingdom, and Venezuela*, Inv. No. 701-TA-360 and 361 and 731-TA-688-695 (Final), USITC Pub. 2870 (Apr. 1995) ("*Pipe Fittings*")).  Second, in finding that import volumes from Israel were significant, the Commission impermissibly interpreted the statute such that *any* increase in subject import volumes or market share is significant, regardless of how small, rendering the statutory term "significant" superfluous.  *Id.* at 20-21.  Third, the Commission's finding that such a microscopic import volume increase and change in market share are "significant" runs afoul of the plain meaning of language in the statute.  *Id.* at 21.

Defendant raises three arguments in defending its volume analysis, but these contentions do not salvage the Commission's conclusions.

NON-CONFIDENTIAL VERSION

1.      **Defendant Does Not Dispute That Plaintiff's Import Volumes and Increased Volumes Were Small**

Throughout the POI, Israel's market share remained in the [                    ] (i.e., [

] percent), and the volume in any year of the POI was a fraction of U.S. shipments.  *Staff Report* at C-3, C.R. 218.  Yet, Defendant argues that the Commission could have found subject import volumes to be significant using six criteria and "need not find subject import volume significant with respect to all six criteria to find the volume of subject imports to be significant." Def. Br. 18-19.  In Defendant's view, the Commission found that subject imports from Israel were significant based on three criteria: (1) absolute volume, (2) increase in volume in absolute terms, and (3) relative to U.S. consumption.  *Id*.  Defendant does not respond to Plaintiff's arguments why each of these findings is unsupported by substantial evidence, Pl. Br. 17-19, but instead simply repeats the Commission's conclusions, Def. Br. 18-19.  Defendant has therefore waived its defense of these findings.  *See, e.g.*, *Neimenggu Fufeng Biotechs. Co. v. United States*, 741 F. Supp. 3d 1354, 1375-76 (Ct. Int'l Trade 2024) (holding that defendant waived its defense of certain findings by failing to respond to arguments raised in plaintiff's opening brief).

Moreover, Defendant appears to misunderstand Plaintiff's reason for comparing the volume and increase in volume of subject imports from Israel to U.S. production.  When dealing with numbers in absolute terms, it can be difficult without context to understand whether any particular number or change in numbers is significant.  For example, by explaining that the increased volume comprised "less than [     ] days' average production by the domestic industry," Plaintiff added context to highlight that volumes and increased volumes of subject imports from Israel were an insignificant speck in the universe of brass rod shipments that no reasonable fact finder could find significant.  Pl. Br. 29-30.  Defendant does not dispute that these volumes and increased volumes are tiny but instead focuses its argument on being allowed to find such small

volumes to be significant.  As discussed below in Section B.3, such a strained statutory interpretation does not withstand scrutiny.

**2.    The Commission Was Required to Address *Pipe Fittings***

Defendant next argues that it was not required to address its previous negative determination in *Pipe Fittings* because (1) it was not "bound" by that determination and (2) factual differences between the cases are so vast as to not require the Commission to address *Pipe Fittings* at all.

While the Commission is not "bound" by *Pipe Fittings*, it "may not treat two like situations differently without explanation."  *Royal Thai Gov't v. United States*, 502 F. Supp. 2d 1334, 1341 (Ct. Int'l Trade 2007).  Contrary to Defendant's assertion, the facts surrounding the volume analysis in *Pipe Fittings* are like the facts in *Brass Rod*.  In both investigations, the Commission was required by statute to conduct a decumulated analysis of subject imports from Israel, and Israel's market share remained [                    ] throughout the POI; and subject import volumes increased in percentage terms, but the increase was insignificant absolutely and relative to apparent U.S. consumption and domestic production.  Pl. Br. 18-19.

As Defendant points out, there are factual differences between the investigations, including the extent of changes to the domestic industries' market shares.  Def. Br. 19-20.  But that market share change has no bearing on whether import volumes or changes in volumes were significant.

**3.    Defendant's Interpretation of "Significant" Contravenes the Statute**

Defendant does not attempt to draw a line below which subject import volumes are insignificant.  Instead, Defendant argues that the Commission's volume determination was reasonable despite "seemingly small volumes" of subject imports from Israel because "there is no minimum threshold for import volumes to be found significant" and "the significance of the

8

volume of imports may be affected by the conditions of competition for the industry at issue." Def. Br. 20-21. But Defendant goes further and supplements the Commission's views by explaining that it considered the significance threshold for volume to be low based on the price sensitivity of the brass rod market and potential price effects of small volumes of brass rod. *Id.* at 21.

Defendant raises this price-related *post hoc* rationalization for the first time in its response brief. The Commission did not explain in its volume analysis that the significance threshold turned on price sensitivity. *Majority Opinion* at 45-46, C.R. 238. The Court should therefore reject it. *See Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 20, 23-24 (2020) ("It is a 'foundational principle of administrative law' that judicial review of agency action is limited to 'the grounds that the agency invoked when it took the action'" and "{a}n agency must defend its actions based on the reasons it gave when it acted," not "belated justifications.") (citations omitted).

Moreover, Defendant's position is unworkable because it does not give meaning to the statutory term "significant," which is necessarily (and by definition) a relative term. Pl. Br. 21. Neither the Commission's volume analysis nor Defendant's response explains how the Commission's findings square with the plain language of the statute. *Majority Opinion* at 45-46, C.R. 238; Def. Br. 20-21. That sort of standardless decision-making is the very definition of arbitrary and capricious action. *See CP Kelco, Inc. v. United States*, 949 F.3d 1348, 1356 (Fed. Cir. 2020) (An agency "must reasonably tie the determination under review to the governing statutory standard and to the record evidence by indicating what statutory interpretations the agency is adopting and what facts the agency is finding.").

9

### C.    The Commission's Pricing Analysis Was Unsupported by Substantial Evidence and Otherwise Not in Accordance with Law

The Commission's pricing analysis is unsupported by substantial evidence and not in accordance with law because the Commission (1) applied an unreasonably inflated adjustment to product pricing data for its underselling analysis and (2) improperly found that subject imports from Israel caused negative price effects. Pl. Br. 21-30. By applying a price adjustment that overstated the domestic industry's prices, the Commission could not properly assess the frequency and magnitude of underselling, which is a critical part of its typical pricing analysis. *Id.* at 25-26. The Commission compounded its error when the majority unreasonably rejected an alternative, cost-based adjustment and instead relied on speculative theories about potential costs incurred by U.S. producers that were not captured by the adjustment. *See id.* at 26-27.

Apart from these remandable errors, the Commission did not fully engage with the facts that contradict its conclusions. For example, the Commission did not provide the requisite rational connection between the record evidence showing limited changes to the domestic industry's COGS/net sales ratio, market share, and other indicators, and the Commission's conclusion that subject imports from Israel suppressed the domestic industry's prices to a significant degree. *See id.* at 29-30. Moreover, the majority's conclusion that underselling caused changes in market share is inconsistent with the timing of any underselling. *See id.* at 30.

Defendant attempts to defend each of these findings, but those arguments miss the mark.

### 1.    Defendant Did Not Address the Deficiencies in the Commission's Determinations Regarding Price Adjustments

Defendant argues that, in the underselling analysis, "{t}he Commission fully explained the substantial problems with the proposed {alternative} cost-based adjustment, why it found the price-based adjustment to be the most reliable of the available options, and why it found that it

NON-CONFIDENTIAL VERSION

would be inappropriate to make further adjustments based on volume discounts from petitioners to some scrap buyback end users." Def. Br. 25.

Two facts are critical here for context. First, the *volume* of underselling by subject imports from Israel was **[     ]** compared to the volume reported by U.S. producers. *See Staff Report* at V-41-V-43, C.R. 218. Second, the record includes no pricing data for U.S. shipments of subject imports from Israel through buyback programs, which represented the **[     ]** of U.S. producers' shipments. *Id*. at V-41-V-43, C.R. 218.

Because the Commission nonetheless found that prices for Israeli product affected U.S. producers' prices (a finding Plaintiff separately contests), Plaintiff challenges the Commission's findings based on adjusted pricing data because the majority's selected methodology failed to quantify the true net price to U.S. producers (after adjusting for the price premium for scrap buyback), undermining the price comparisons. Pl. Br. 23. On this issue, Defendant merely restates the Commission's findings, Def. Br. 25-29, without addressing the deficiencies raised by Plaintiff and thus fails to address "an important aspect of the problem." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983).

The Commission's price-based approach was unreasonable for not taking into account volume discounts to large customers that resulted in inaccurate price comparisons. Pl. Br. 25. The majority acknowledged that accounting for volume discounts would result in even larger downward adjustments to domestic prices, from **[   ]** percent to **[   ]** percent, further reducing the extent of any subject import underselling. *Majority Opinion* at 57 n.226, C.R. 238. The Commission nonetheless rejected the price-based approach because the adjustment "would not reverse the majority underselling for subject imports from Israel shipped to end users," but it reached that conclusion without actually analyzing the frequency and degree of underselling under

NON-CONFIDENTIAL VERSION

the price-based approach. *Id.* Thus, the Commission's rejection of the price-based approach was premised on an incomplete analysis of the record.

Defendant sidesteps this critical point, focusing instead on U.S. producers' price lists that specified certain volume discounts and disregarding evidence on the record that larger producers [

]. Def. Br. 26-27; *see Staff Report* at V-7, C.R. 218. Defendant also argues that "petitioners' adjusted pricing data on sales to scrap buyback end users, influenced to some extent by volume discounts, were already compatible with petitioners' pricing data on sales to non-scrap buyback end users and distributors, as well as [              ] pricing data on [              ] sales, which were also influenced to some extent by volume discounts, making no further adjustments necessary or appropriate." Def. Br. 28. This rationale does not appear in the majority's views and therefore constitutes impermissible *post hoc* rationalization. *Regents*, 591 U.S. at 20.

With respect to the Commission's rejection of the cost-based approach, Defendant points to reliance on anecdotal evidence (especially hearing testimony) to support the selected price-based approach. Def. Br. 25-27. That evidence was incomplete. For example, it provided no volumes to calculate a scrap rate to refute the certified questionnaire response data on the record submitted by the petitioners and no quantification of the additional costs U.S. producers incur to purchase scrap. *See* Finkelstein Final Comments at 10, C.R. 228/P.R.162.

Moreover, Defendant does not explain why the Commission, in selecting the price-based approach with certain "limitations," did not prioritize an accurate assessment of frequency and magnitude of underselling. Def. Br. 24. As Defendant acknowledges, frequent underselling is a critical underpinning of the Commission's determinations. *Id.* at 22. Defendant claims that the

**NON-CONFIDENTIAL VERSION**

Commission's price analysis is unassailable because "{i}n sales to end users not through scrap buyback programs, subject imports from Israel undersold the domestic like product in [      ] quarterly comparisons." *Id.* However, when prices are properly adjusted using a cost-based approach, subject imports from Israel actually oversold the domestic industry in such sales in [   ] of [   ] quarterly comparisons (and [   ] percent of volume). Finkelstein Metals Prehearing Brief at 52, C.R. 193/P.R. 127. The price adjustment methodology underpinned the Commission's entire analysis and requires careful scrutiny by the Court. Without properly adjusting prices for sales to scrap buyback customers, the majority's most fundamental conclusions regarding price effects of subject imports from Israel were based on flawed data.

Even if the price-based adjustment was not reasonable, Defendant argues that the Commission was not required to consider the magnitude of underselling in its pricing analysis. Def. Br. 28. Rather than address the previous cases in which the Commission considered such facts (Pl. Br. 25-26), Defendant argues that the Commission is not bound by its findings in any particular investigation. Def. Br. 28 n.11. Regardless of whether the Commission's consideration of magnitude of underselling is a "practice," the Commission "may not treat two like situations differently without explanation." *Royal Thai Gov't*, 502 F. Supp. 2d at 1341. For example, in *Glass Containers from China*, the Commission assessed the instances of overselling (46 instances of 59 available quarterly comparisons) and overselling margins (ranging from 1.1 percent to 123.4 percent), as it does in most (if not all) investigations. *See* Inv. No. 701-TA-630 (Final), USITC Pub. 5068 at 25-27 (June 2020). Similarly, in this case, when properly adjusted, the record demonstrates significant overselling by subject imports from Israel. *Staff Report* at F-11, C.R. 218 (for the cost-based approach, reporting overselling in [   ] instances of [   ] available quarterly comparisons at margins ranging from [   ] percent to [   ] percent). The majority's

NON-CONFIDENTIAL VERSION

determination of significant underselling was therefore not supported by substantial evidence and not in accordance with law.

> **2.      Defendant Misconstrues the Record Regarding the Insignificant Volume of Alleged Lost Sales**

Defendant argues that the Commission's pricing analysis survives scrutiny regardless of whether underselling existed because questionnaire responses yielded a significant volume of "confirmed" lost sales.  Def. Br. 22-23, 31.  Defendant cites the Commission's finding that purchasers shifted [            ] pounds of brass rod purchases from domestic sources to Israeli-origin imports and attributed all of that volume to lower prices.  *Id.* at 22.  As an initial matter, [

        ] pounds is approximately [     ] percent of the [            ] pounds of apparent U.S. consumption during the POI, which cannot reasonably be interpreted as leading to a significant price effect under any reading of the statute.  *Staff Report* at C-3, C.R. 218.

Moreover, Defendant erred in attributing the entire volume of alleged lost sales to lower prices.  Record evidence shows that a large portion of the alleged lost sales cannot be attributed to lower prices:

- [     ], which accounted for [     ] percent of subject merchandise from Israel purchased on the basis of price, reported that [

                                        ]. [      ]
  Purchaser QR at II-1, II-2, C.R. 101.

- [          ], the second-largest purchaser of subject imports from Israel, [

                                ]." *See* [          ] Purchaser QR at
  II-2, C.R. 114.

- U.S. producers [                                    ], resulting in lost sales
  for reasons other than price.  *See* [     ] Purchaser QR at III-14, C.R. 101.

Thus, Defendant cannot salvage the Commission's deficient pricing analysis by relying on alleged lost sales instead of price suppression caused by underselling.

3.    **Defendant Did Not Address Critical Deficiencies in the Commission's Price Effects Analysis**

In responding to Plaintiff's argument on price effects, Defendant restates the Commission's views without addressing the core of Plaintiff's arguments.  For the reasons explained below, those views lack merit.

First, Defendant splits hairs in attempting to defend the Commission's findings as to the domestic industry's COGS/net sales ratio.  Def. Br. 29-30.  Defendant strenuously argues that the COGS/net sales ratio at the end of the POI of [      ] percent "hardly 'reversed'" the COGS/net sales ratio in 2020 of [      ] percent.  *Id.* at 30.  Considering that COGS increased by [      ] percent from 2020 to 2021 and demand declined by [            ] during each period thereafter, the fact that the domestic industry could cover increasing costs in a challenging demand environment is a sign of a healthy industry.  *Staff Report* at C-3, C-6, C.R. 218.  This reversal is particularly remarkable considering the significant price suppression caused by other subject imports during this time.  *Majority Opinion* at 66, C.R. 238.

Second, Defendant cites changes in several metrics from 2020 to 2022 as evidence of the significant negative price effects caused by subject import underselling.  Def. Br. 30-31.  These metrics include non-toll gross profit to net sales ratio, non-toll ratio of operating income to net sales, non-toll net sales average unit values.  *Id*.  The Commission's reliance on trends from 2020 to 2022 is problematic because it merges negative trends during the 2020-2021 period, when the domestic industry experienced severe supply constraints and aberrational cost increases, with positive trends during the 2021-2022 period after these conditions eased.  *See infra*, Section D.1; Pl. Br 33-34.  By attributing performance during the full POI to underselling by subject imports from Israel, the Commission misattributes declines in 2020-2021 caused by factors other than subject imports, while simultaneously treating the domestic industry's inability to fully recover

15

from those declines in 2021-2022 as a significant negative price effect. *See infra*, Section D.1; Pl. Br. 33-34. The Commission's continued reliance on data over the full POI (2020-2022) ignores Plaintiff's arguments and thus an important aspect of the problem. *State Farm*, 463 U.S. at 43.

Finally, Defendant's response to Plaintiff's argument regarding the timing of market share changes is misplaced.[4] Defendant concedes that the Commission "recognized that the {domestic} industry's market share increased" from 2021 to 2022 and in the interim period, but attributed the loss of market share over the entire POI to underselling by subject imports from Israel "{n}otwithstanding these increases." Def. Br. 32-33. In so doing, Defendant glosses over the fact that the Commission could not have found significant negative price effects from 2020 to 2021 when there were supply constraints and aberrational costs increase (i.e., the only period of the POI in which the domestic industry lost market share), or from 2021 to interim 2023 when the domestic industry gained market share. *Staff Report* at C-3, C.R. 218. Nonetheless, Defendant argues that the Commission reasonably attributed lost market share during the full POI to underselling by subject imports. That is no "rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43 (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)).

**D.    The Commission's Determination of Negative Impact from the Israeli-Origin Subject Imports Is Not Supported by Substantial Evidence**

The Commission's findings were unsupported by substantial evidence because the majority relied on isolated tidbits of data that ignore or obfuscate the entirety of the record. Pl. Br. 30-31. Considering the domestic industry's strong performance with respect to several performance

---

[4] Defendant-Intervenors contend that Plaintiff did not exhaust its administrative remedies with regard to this argument. Def.-Int. Br. 23. However, Finkelstein raised this argument in its prehearing brief. *See* Prehearing Brief of Finkelstein Metals at 56, C.R. 193/P.R. 127. Because only "arguments not presented in the underlying administrative proceedings" are unexhausted, Defendant-Intervenors' argument is misplaced. *Qingdao Sea-Line Trading Co. v. United States*, 766 F.3d 1378, 1388 (Fed. Cir. 2014).

indicators, no reasonable fact finder could conclude that the domestic industry suffered "material injury" by reason of subject imports from Israel. *Id.* at 35. In addition, the Commission's determinations were not in accordance with law because the Commission effectively read the word "material" out of the statute. *Id.* at 35-36. Defendant's attempts to defend these findings fall short.

### 1.    Defendant Did Not Address Plaintiff's Arguments

Defendant merely restates the Commission's conclusions without addressing Plaintiff's arguments. Def. Br. 33-36. For example, Defendant continues to rely on 2020-2022 trends without addressing Plaintiff's argument that early POI data were affected by the domestic industry's supply constraints. *See id*. By relying on 2020-2022 data, Defendant strips these metrics of critical context, obfuscating the only reasonable interpretation of the data. *See infra*, Section E.

Moreover, Defendant concedes that the Commission acknowledged, but did not rely on, "increases in the industry's capacity utilization, net sales value, gross profits, and capital expenditures between 2020 and 2022, among other factors." Def. Br. 34. These are exactly the metrics that the Commission ignored when relying on "isolated tidbits" of flawed information to reach its determination. Remand on this point does not require the Court to reweigh the evidence, as Defendant contends; instead, it only requires the Court to confirm that this material evidence detracts from the Commission's conclusion and that the Commission has failed to address it (which it has). *Nippon Steel*, 337 F.3d at 1379 (requiring an agency to assess the "record as a whole, including evidence that supports as well as evidence that fairly detracts from the substantiality of the evidence") (internal quotation marks and citation omitted).

### 2.    Defendant's Arguments Regarding the Small Change in Market Share Lack Merit

Defendant next attempts to address Plaintiff's arguments that small changes in market share do not support a finding that subject imports significantly impacted the domestic industry. Def.

**NON-CONFIDENTIAL VERSION**

Br. 35.  First, Defendant asserts that Plaintiff "fails to acknowledge the Commission's reliance on confirmed lost sales of **[            ]** pounds, the equivalent of **[       ]** percent of U.S. shipments of subject imports from Israel during the POI," in its market share analysis.  *Id.* (internal citations omitted).  However, Defendant tellingly does not state that the domestic industry lost "significant" market share, only that there was "a market share shift."  *Id.* (emphasis added); *supra* Section B.1.

In any event, purported lost sales as a percentage of the small volume of imports misrepresents and overstates their significance.  As discussed in Section C.2, **[            ]** pounds is approximately **[     ]** percent of the **[               ]** pounds of apparent U.S. consumption during the POI.  *Staff Report* at C-3, C.R. 218.  It strains credulity to assert that **[     ]** percent of the market, or the domestic industry's loss of **[     ]** percentage points of market share, amount to substantial evidence of any impact (let alone negative impact) or material injury to the domestic industry by reason of subject imports from Israel.  *Majority Opinion* at 74, C.R. 218.  That is particularly true when (as here) the domestic industry maintained market share of over **[     ]** percent throughout the POI, while Israel's share was consistently in the **[               ]**.  *Staff Report* at C-3, C.R. 218.

Defendant continues by arguing that "small volumes of domestic sales lost to subject imports from Israel resulted in downward revisions to domestic producers' price lists, affecting their prices to all customers using those price lists and contributing to the suppression of domestic prices by low-priced subject imports from Israel."  Def. Br. 35.  In addition, Defendant avers that the domestic industry "was unable to benefit fully from the increase in apparent U.S. consumption from 2020 to 2022" because "the domestic industry lost market share to subject imports from Israel."  *Id.*

Defendant's argument is based on the false premise that any underselling by subject imports from Israel was significant.  *Supra*, Section B.3.  Regardless of whether the Court affirms

the Commission's findings of underselling by subject imports from Israel, the domestic industry maintained its dominance in the market and did not lose a significant share to subject imports from Israel.  Pl. Br. 33; *supra* Section C.

### 3. The Domestic Industry's Profitability Proves its Strong Operational and Financial Performance

Defendant argues that it was not required to consider the domestic industry's strong and improving financial performance, citing the statutory provision that "{t}he Commission may not determine that there is no material injury or threat of material injury to an industry in the United States merely because that industry is profitable or because the performance of that industry has recently improved."  Def. Br. 36 (citing 19 U.S.C. § 1677(7)(J)).  However, the plain terms of this provision state only that the Commission cannot base a negative injury determination solely on the domestic industry's profitability or recent improvement.  It does not negate the Commission's independent obligation to consider the entire record and to support its conclusions with substantial evidence.  *See Nippon Steel*, 337 F.3d at 1379.  In this case, the domestic industry was not "merely" profitable; its profitability improved throughout the POI alongside many other performance metrics that demonstrated the domestic industry's strong operational and financial performance.  Pl. Br. 31-32.

### 4. Defendant's Arguments about the Domestic Industry's Profitability Lack Context

Defendant attempts to rebut Plaintiff's argument that "the majority emphasized aberrational metrics while ignoring other metrics that more clearly explained the domestic industry's financial improvements."  Def. Br. 36 (responding to Pl. Br. 33).  According to Defendant, the decline in operating income between 2020 to 2022 was not a temporary decline driven by an increase in sales, general, and administrative expenses in 2021 because operating

income declined from 2021 to 2022 after increasing from 2020 to 2021.  Def. Br. 36.  Defendant also cites declines in the domestic industry's gross profit/net sales ratio from 2020 to 2022.  *Id.* at 36-37.

The record belies Defendant's arguments.  **[        ]** of the decline in the domestic industry's non-toll operating income ratio occurred from 2020 to 2021 (from **[      ]** percent to **[      ]** percent or **[    ]** percentage points) when unit COGS increased by **[      ]** percent; from 2021 to 2022, the operating income ratio declined by **[       ]** percentage points (**[         ]**) when unit COGS increased to a lesser degree (by **[    ]** percent).  *Staff Report* at C-5, C.R. 218.

Moreover, the cited declines in the domestic industry's profitability from 2020 to 2022 largely occurred when the domestic industry faced production constraints and therefore cannot be attributed to subject imports from Israel.  *Staff Report* at VI-7, C.R. 218; Pl. Br. 33-34 (explaining that the Commission's impact analysis relies on misleading timelines).  Defendant attempts to overcome these facts by relying on operating income instead of operating income/net sales ratio.  Def. Br. 36.  As the domestic industry's net sales declined from 2021 to 2022 (**[      ]** percent by quantity and **[     ]** percent by value) when apparent U.S. consumption declined at a similar rate (**[     ]** percent), operating income declined by **[     ]** percent.  *Staff Report* at C-3, C-5, C.R. 218.  Yet, the industry's operating income ratio **[                        ]**, decreasing by **[       ]** percentage points year over year.  *Id.*  The domestic industry **[         ]** profitability, even as operating income declined with apparent U.S. consumption; thus, consumption, not subject imports, drove the decline in the domestic industry's operating income.

### E.  The Commission Improperly Attributed Changes in the Domestic Industry's Performance to Subject Imports from Israel

"The majority improperly attributed changes in the domestic industry's performance to subject imports from Israel" for two reasons.  Pl. Br. 36-41.  First, "the Commission disregarded

20

record evidence demonstrating that supply constraints injured the domestic industry." *Id.* at 37.

Second, the majority erroneously "attributed material injury to subject imports from Israel without

addressing the impact of subject imports from other countries." *Id.* at 39.

Defendant fails to engage with Plaintiff's arguments and, instead, simply repeats the

Commission's deficient arguments and argues without support that these alternative causes of

injury did not negate the alleged injury caused by subject imports from Israel.  Def. Br. 39-45.

Those efforts fall short and warrant remand.

### 1.    Defendant Simply Repeats the Commission's Conclusions Regarding the Domestic Industry's Supply Constraints

Defendant argues that the Commission "thoroughly discussed the industry's supply

constraints during the POI," but "found that they did not explain the industry's loss of market share

to subject imports from Israel from 2020 to 2022." *Id.* at 40.  In doing so, Defendant simply repeats

the Commission's findings regarding the domestic industry's capacity utilization and trends from

2020-2022 without addressing the deficiencies in those findings identified by Plaintiff.  *Id.* at 38-42

(responding to Pl. Br. 37-39).  Such a failure to respond to arguments raised in an opening brief

typically constitutes waiver.  *See, e.g.*, *Neimenggu Fufeng Biotechs.*, 741 F. Supp. 3d at 1375-76.

For example, regarding capacity utilization, Defendant does not address shortcomings in

the data cited by Plaintiff (i.e., that **[**



**]**).  Pl. Br. 39.  Regarding

performance trends, Defendant failed to explain how the Commission's use of trends from 2020

to 2022 was appropriate to disaggregate the impact of supply constraints from the impact of subject

imports from Israel.  Pl. Br. 37.

**NON-CONFIDENTIAL VERSION**

According to Defendant, the Commission reasonably attributed injury to subject imports from Israel because it "found that the market share of subject imports from Israel remained higher in 2022 than in 2020, and the domestic industry's market share remained lower than in 2020." Def. Br. 40.  However, as Plaintiff previously explained, changes in market share over 2020-2022 reflect trends (e.g., in the domestic industry's production and shipments relative to apparent consumption) driven entirely by the supply constraints in 2021, before improving in 2022.  Pl. Br. 33; *supra* Section D.1.  Defendant did nothing to refute Plaintiff's argument or explain how the Commission's approach was reasonable.

> **2.    Defendant Does Not Address the Commission's Failure to Differentiate Impact on the Domestic Industry by Israeli-Origin Subject Imports from Other Subject Imports**

In defending the Commission's finding that injury was caused by other subject imports, Defendant simply repeats the Commission's findings that "any pricing pressure exerted by those imports on the domestic industry did not negate the pricing pressure from subject imports from Israel" without engaging with the substance of Plaintiff's arguments.  Def. Br. 42.  Defendant argues that the Commission properly attributed material injury to Israel because subject imports from Israel merely had to be "more than an incidental, tangential, or trivial cause of injury."  *Id.* at 44 (citation omitted).

However, the Commission simply repeated portions of its analysis in the impact sections regarding subject imports from Israel and other subject imports.  Pl. Br. 39-40.  As a result, the Commission effectively double-counted the impact of subject imports from Israel and other subject imports.  For example, the Commission attributed the somewhat slower pace of increases in the domestic industry's production ([    ] percent) and U.S. shipments ([    ] percent) as compared to apparent U.S. consumption ([    ] percent) to both subject imports from Israel and other subject

**NON-CONFIDENTIAL VERSION**

imports. *Majority Opinion* at 74, 98. However, the Commission did not explain how subject imports from Israel contributed more than an incidental, tangential, or trivial share of those already small differences. Pl. Br. 39-40 (comparing *Majority Opinion* at 74, 98, C.R. 238). In fact, the Commission only disaggregated the impact of subject imports from Israel from other subject imports when assigning **[    ]** percent of market share gained by subject imports from Israel at the expense of the domestic industry. *Majority Opinion* at 74. If the Commission's disaggregation of the impact of subject imports from Israel yielded a trivial change in market share, no reasonable factfinder could conclude that subject imports from Israel contributed to more than an incidental, tangential, or trivial portion of the minor alleged impact on the domestic industry.

II.    **Conclusion**

We respectfully request that the Court grant Plaintiff's Rule 56.2 Motion for Judgment on the Agency Record and remand this matter to the Commission for disposition consistent with the Court's opinion.

Respectfully submitted,

/s/ Bernd G. Janzen
Bernd G. Janzen
Devin S. Sikes
Julia K. Eppard
Daniel M. Witkowski
Sydney L. Stringer
Paul S. Bettencourt
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, NW
Washington, DC 20006

Dated:  September 19, 2025                    *Counsel to Government of Israel, Ministry of Economy and Industry*

NON-CONFIDENTIAL VERSION

<u>**CERTIFICATE OF COMPLIANCE**</u>

I, Bernd G. Janzen, an attorney with Akin Gump Strauss Hauer & Feld LLP, certify that Plaintiff's Reply Brief in Support of Its Rule 56.2 Motion for Judgment on the Agency Record contains 6,977 words (according to the word count feature of the Microsoft Word processing program) and therefore complies with the word count limitation set forth in Paragraph 2(B)(1)(a) of the Standard Chambers Procedures of the Court.

Dated: September 19, 2025                          /s/ Bernd G. Janzen
                                                   Bernd G. Janzen
                                                   AKIN GUMP STRAUSS HAUER & FELD LLP

                                                   *Counsel to Government of Israel, Ministry of Economy and Industry*