**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE LISA W. WANG, JUDGE

GOVERNMENT OF ISRAEL, MINISTRY OF ECONOMY AND INDUSTRY,

Plaintiff,

v.

UNITED STATES,

Defendant,

and

AMERICAN BRASS ROD FAIR TRADE COALITION, et al.,

Defendant-Intervenor.

Court No. 24-00197

**Non-Confidential Version**
Business Proprietary Information removed from pages 2, 11, 13-16, and 19.

**PLAINTIFF'S COMMENTS IN OPPOSITION TO THE COMMISSION'S REDETERMINATION PURSUANT TO COURT REMAND**

**NON-CONFIDENTIAL VERSION**

**TABLE OF CONTENTS**

**INTRODUCTION** ........ 1

**BACKGROUND** ........ 2

**ARGUMENT** ........ 7

I. THE COMMISSION'S REMAND REDETERMINATION IS INCONSISTENT WITH SUBSTANTIAL EVIDENCE, LAW, AND THE COURT'S ORDER TO "ANALYZE THE VOLUME AND MARKET SHARE DATA IN THE CONTEXT OF CONDITIONS OF COMPETITION" ........ 7

A. THE COMMISSION IS REQUIRED TO CONSIDER CONDITIONS OF COMPETITION IN ITS VOLUME ANALYSIS ........ 7

B. THE COMMISSION FAILED TO CONSIDER SEVERAL CRITICAL CONDITIONS OF COMPETITION IN ITS VOLUME ANALYSIS ........ 10

1. The Commission Was Required to Evaluate the Significance of Subject Import Volumes from Israel in the Context of Supply and Demand Conditions ........ 10

2. The Record Demonstrates the Critical Importance of Evaluating the Volume of Subject Imports from Israel in the Context of Supply and Demand Conditions ........ 12

C. THE COMMISSION'S REMAND REDETERMINATION FAILS TO GIVE MEANING TO THE STATUTORY TERM "SIGNIFICANT" ........ 17

1. The Commission Did Not Engage With the Volume and Market Share Data on the Record ........ 18

2. The Commission's Reliance on Its Price and Impact Analyses Resulted in Circular Reasoning ........ 19

3. The Commission's Reasoning Fails to Give Meaning to the Statutory Term "Significant" ........ 21

**CONCLUSION** ........ 22

**NON-CONFIDENTIAL VERSION**

# TABLE OF AUTHORITIES

## CASES

*Altx, Inc. v. United States*, 26 C.I.T. 709 (2002) .................... 16, 21
*Changzhou Wujin Fine Chem. Factory Co. v. United States*, 701 F.3d 1367 (Fed. Cir. 2012)....... 6
*Citrosuco Paulista, S.A. v. United States*, 704 F. Supp. 1075 (Ct. Int'l Trade 1988).................... 7
*CS Wind Vietnam Co., Ltd. v. United States*, 832 F.3d 1367 (Fed. Cir. 2016) .................... 25
*Mid Continent Nail Corp. v. United States*, 846 F.3d 1364 (Fed. Cir. 2017).................... 6
*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29 (1983) ............. 6, 7, 12
*Nippon Steel Corp. v. United States*, 182 F. Supp. 2d 1330 (Ct. Int'l Trade 2001) .........1, 4, 11, 21
*Nippon Steel Corp. v. United States*, 337 F.3d 1373 (Fed. Cir. 2003) .................... 6
*Nippon Steel Corp. v. United States*, 458 F.3d 1345 (Fed. Cir. 2006) .................... 5, 13
*NMB Sing. Ltd. v. United States*, 557 F.3d 1316 (Fed. Cir. 2009) ....................7, 11
*OCP S.A. v. United States*, 658 F.Supp.3d 1297 (Ct. Int'l Trade 2023)....................11, 16, 17
*SKF USA Inc. v. United States*, 263 F.3d 1369 (Fed. Cir. 2001).................... 8
*Timken U.S. Corp. v. United States*, 421 F.3d 1350 (Fed. Cir. 2005) .................... 6
*Transactive Corp. v. United States*, 91 F.3d 232 (D.C. Cir. 1996).................... 8
*Tropicana Prods. Inc. v. United States*, 484 F. Supp. 2d, 1330 (Ct. Int'l Trade 2007) .................... 7
*Trustees in Bankr. of N. Am. Rubber Thread Co. v. United States*, 533 F. Supp. 2d 1290 (Ct. Int'l Trade 2007) ....................11
*Universal Camera Corp. v. NLRB*, 340 U.S. 474 (1951).................... 5, 6
*Xinjiamei Furniture (Zhangzhou) Co., Ltd. v. United States*, 968 F. Supp. 2d 1255 (Ct. Int'l Trade 2014) .................... 8

## STATUTES

19 U.S.C. § 1516a(b)(1)(B)(i).................... 5
19 U.S.C. § 1677(24)(A)(i).................... 16
19 U.S.C. § 1677(7)(C)(i).................... passim
19 U.S.C. § 1677(7)(C)(iii).................... 12
19 U.S.C. § 1677(7)(G)(ii)(IV).................... 3

## ADMINISTRATIVE DECISIONS

*Aluminum Extrusions from China, Colombia, Ecuador, India, Indonesia, Italy, Malaysia, Mexico, South Korea, Taiwan, Thailand, Turkey, United Arab Emirates, and Vietnam*, Inv. Nos. 701-TA-695-698 and 731-TA-1643-1644 and 1646-1657 (Final), USITC Pub. 5560 (Nov. 2024).. 9
*Ball Bearings from China*, Inv. No. 701-TA-989 (Final), USITC Pub. 3593 (Apr. 2003) ........... 17
*Certain Carbon Steel Butt-Weld Pipe Fittings from France, India, Israel, Malaysia, the Republic of Korea, Thailand, the United Kingdom, and Venezuela*, Inv. No. 701-TA-360 and 361 and 731-TA-688 through 695 (Final), USITC Pub. 2870 (Apr. 1995) .................... 16
*Glass Containers from China*, Inv. No. 701-TA-630 (Final), USITC Pub. 5068 (June 2020) ..... 17
*Silica Bricks and Shapes from China*, Inv. No. 731-TA-1205 (Final), USITC Pub. 4443 (Jan. 2014) .................... 17

## INTRODUCTION

The U.S. International Trade Commission's ("Commission") Remand Redetermination fails to remediate the fundamental flaws that warranted remand of the Commission's original volume analysis. *See* Consol. Court No. 24-00197, ECF 60 (Sept. 11, 2026), C.R. 242R ("*Remand Redetermination*"); *see also Government of Israel, Ministry of Economy and Industry v. United States*, Slip Op. 26-57, Court No. 24-00197 (June 8, 2026) ("*Opinion and Order*"). At the outset, instead of simply complying with the *Opinion and Order*, the Commission attempts to rebut the Court's remand instructions by claiming that it was not required to conduct the analysis ordered by the Court.

The Commission's analysis proceeds to dodge the Court's primary charge – that "the Commission must analyze the volume and market share data in the context of conditions of competition." *Opinion and Order* at 16 (quoting *Nippon Steel Corp. v. United States*, 182 F. Supp. 2d 1330, 1335 (Ct. Int'l Trade 2001)). The Commission declines to engage fully with either the data or all relevant conditions of competition. Instead, it skates around such engagement through circular reasoning, finding that the volume and market share of subject imports from Israel were significant because the domestic industry experienced adverse price effects and a negative impact, which could only have occurred on the basis of significant import volume.

Substantial evidence and law do not support the Commission's continued failure to consider the whole record and conduct a reasoned volume analysis. The Commission expressly declines to consider the entire record in its *Remand Redetermination*, ignoring two conditions of competition outlined in the *Majority Views* – supply and demand conditions – and providing only a rote recounting of volume and market share data. *Cf. Opinion and Order* at 17 ("The recitation of metrics does not provide a sufficient basis for evaluating whether the volume of subject imports was 'significant,' particularly when such imports represent a small percentage of market share

relative to that held by the domestic industry."). Moreover, by finding that inconsequential volumes of subject imports from Israel are significant, the Commission continues to read the statutory term "significant" out of the statute.

As Plaintiff explained in briefing and confirmed below, the Commission failed to address volume and market share data that confirm the insignificance of subject import volumes from Israel in the context of conditions of competition. For example,

- U.S. producers' U.S. shipment volume ranged from **[ ]** pounds to **[ ]** pounds, **[ ]** to **[ ]** times higher than the peak shipment volume of subject imports from Israel. *See Confidential Staff Report* at Table C-1, C.R. 218; *Confidential Majority Views* at 69, C.R. 232.

- Export shipments by U.S. producers ranged from **[ ]** pounds to **[ ]** pounds, more than **[ ]** times higher than the peak shipment volume of subject imports from Israel. *See Confidential Staff Report* at Table C-1, C.R. 218.

- Ending inventory quantity by U.S. producers ranged from **[ ]** pounds to **[ ]** pounds, more than the peak shipment volume of subject imports from Israel. *See id*.

- Shipment volume of other subject imports ranged from **[ ]** pounds to **[ ]** pounds, nearly **[ ]** times higher than the peak shipment volume of subject imports from Israel. *See id*.

- The domestic industry faced supply constraints during the only two periods in the period of investigation ("POI") in which subject import volumes from Israel increased. *See id.*; *Confidential Majority Views* at 33, 34, 76 n.299, C.R. 232.

Had the Commission properly considered these data in light of all conditions of competition established on the record, no reasonable mind would have determined that an industry was materially injured by reason of subject imports. For these reasons, the Court should once again remand the Commission's determinations for reconsideration.

## BACKGROUND

In nearly all injury investigations, the Commission cumulates imports from all countries subject to the investigation in its material injury analysis. However, in investigations involving

subject imports from Israel, the Commission cumulates subject imports from Israel with other subject imports only if the Commission first determines that the domestic industry is materially injured, or threatened with material injury, by subject imports from Israel. *See* 19 U.S.C. § 1677(7)(G)(ii)(IV).

On June 8, 2026, the Court issued the *Opinion and Order*, holding that the decumulated volume analysis of subject imports from Israel in the Commission's original affirmative injury determinations was not supported by substantial evidence because the "Commission fail{ed} to link its conclusion regarding the significance of the volume of subject imports to the conditions of competition of the affected industry." *Opinion and Order* at 16. According to the Court, the Commission did not "provide a sufficient basis for evaluating whether the volume of subject imports was 'significant,'" contrary to the Commission's obligation to base its determination on substantial evidence. *Id*. at 17. The Court explained that, while the Commission provided a rote recounting of the metrics relevant to assessing the significance of subject import volumes from Israel, "{t}he recitation of metrics does not provide a sufficient basis for evaluating whether the volume of subject imports was 'significant,' particularly when such imports represent a small percentage of market share relative to that held by the domestic industry." *Id*. The Court explained that "for the Commission's findings under section 1677(7)(C)(i) to be supported by substantial evidence, the Commission must analyze the volume and market share data in the context of conditions of competition." *Id*. at 16 (quoting *Nippon Steel Corp. v. United States*, 182 F. Supp. 2d 1330, 1335 (Ct. Int'l Trade 2001)). The Court remanded the Commission's determinations and ordered the Commission to "provide an adequate explanation of whether the volume of subject imports, or any increase in that volume, either in absolute terms or relative to apparent consumption, is significant." *Id*. at 18.

In the *Remand Redetermination*, the Commission made three critical findings. First, the Commission argued that it was not required to address conditions of competition in its volume analysis because the statute references conditions of competition only in the clause related to the Commission's impact analysis. *See Remand Redetermination* at 15, 242R. The Commission did not explain how this assertion accords with the substantial evidence standard or the Court's *Opinion and Order*.

Second, the Commission determined that substitutability and the importance of pricing are the only relevant conditions of competition bearing on the significance of volume. *See id*. at 17-20. In doing so, the Commission declined to consider trends in supply and demand, as requested by Plaintiff, because the Commission had already considered these conditions in its separate impact analysis. *See id*. at 17-20, 23-24 n.80. The Commission also declined to engage with the volume and market share data regarding subject imports from Israel, apart from merely reciting the relevant data. *See id*. at 16-17.

Third, the Commission determined that it was appropriate to incorporate its price and impact analyses by reference. *See id*. at 20. While Plaintiff had explained that a revised volume analysis necessarily affects the Commission's price and impact analyses, which are based on the assumption of significant volume, the Commission reached the opposite conclusion. *See Government of Israel's Comments on the Commission's Forthcoming Remand Redetermination* at 9-10, C.R. 241R/P.R. 223R; *see infra* Section I.C.2. The Commission "conclude{d} that the volume of subject imports from Israel was significant in the context of the relevant conditions of competition because those conditions of competition enabled that volume to have adverse price effects and a significant adverse impact on the domestic industry." *Remand Redetermination* at 25. In other words, the Commission determined that, regardless of actual import volume and

market share data, subject imports from Israel must have been significant because the domestic industry experienced price effects and a negative impact.

## STANDARD OF REVIEW

The Court "shall hold unlawful any determination . . . found . . . to be unsupported by substantial evidence on the record{} or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

Under the substantial evidence standard, the Court has an obligation "to determine . . . in the exercise of {its} independent judgment, whether on the whole record the evidence in a given instance is sufficiently substantial to support a finding . . . ." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 484 n.17 (1951) (quoting S. Rep. No. 752, 79th Cong., 1st Sess. 28, at 30-31 (1945)); *accord Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351–52 (Fed. Cir. 2006). The Court "is not barred from setting aside {the Commission's} decision when it cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to {the Commission's} view." *Universal Camera*, 340 U.S. at 488. Consistent with these principles, the Court must determine whether the Commission based its decisions on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003) (internal quotation marks and citation omitted).

If the Commission acts arbitrarily or capriciously, its determination is not in accordance with law. *See, e.g.*, *Mid Continent Nail Corp. v. United States*, 846 F.3d 1364, 1372 (Fed. Cir. 2017) ("Commerce's decision will {} be set aside if it is arbitrary and capricious." (quoting *Changzhou Wujin Fine Chem. Factory Co. v. United States*, 701 F.3d 1367, 1374 (Fed. Cir. 2012))). To avoid arbitrary action, the Commission must engage in reasoned decision-making, by

"examin{ing} the relevant data and articulat{ing} a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Timken U.S. Corp. v. United States*, 421 F.3d 1350, 1355 (Fed. Cir. 2005) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983)). Failure to consider "an important aspect of the problem" renders a determination arbitrary. *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Automobile Ins. Co.*, 463 U.S. 29, 43 (1983); *see also Tropicana Prods. Inc. v. United States*, 484 F. Supp. 2d, 1330, 1347 (Ct. Int'l Trade 2007) (holding that the Commission's determination was "arbitrary and capricious because it did not address many important issues relating to the effects of the short supply of domestic oranges upon the domestic industry"). Similarly, the Commission acts arbitrarily when it "offer{s} an explanation for its decision that runs counter to the evidence before the agency." *State Farm*, 463 U.S. at 43.

The Commission's duty not to act in an arbitrary fashion also requires it to engage in consistent and even-handed decision-making. It must act consistently with its past practice or articulate a reasoned explanation for departing from that practice. *See, e.g.*, *NMB Sing. Ltd. v. United States*, 557 F.3d 1316, 1328 (Fed. Cir. 2009) (remanding to Commerce and explaining that "{o}nce Commerce establishes a course of action . . . Commerce is obliged to follow it until Commerce provides a sufficient, reasoned analysis explaining why a change is necessary"); *Citrosuco Paulista, S.A. v. United States*, 704 F. Supp. 1075, 1088 (Ct. Int'l Trade 1988) ("While the Commission is not obligated to follow prior decisions if new arguments or facts are presented that support a different conclusion, this does not permit the Commission to act arbitrarily. This is because it is also a general rule that an agency must either conform itself to its prior decisions or explain the reasons for its departure." (citations omitted)). The Commission also cannot treat like situations differently without providing adequate explanation. *See, e.g.*, *SKF USA Inc. v. United*

*States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001) ("{A}n agency action is arbitrary when the agency offer{s} insufficient reasons for treating similar situations differently." (quoting *Transactive Corp. v. United States*, 91 F.3d 232, 237 (D.C. Cir. 1996))).

Finally, "{t}he results of a redetermination pursuant to court remand are also reviewed for compliance with the court's remand order." *Xinjiamei Furniture (Zhangzhou) Co., Ltd. v. United States*, 968 F. Supp. 2d 1255, 1259 (Ct. Int'l Trade 2014) (cleaned up).

## ARGUMENT

### I. The Commission's Remand Redetermination is Inconsistent With Substantial Evidence, Law, and the Court's Order to "Analyze the Volume and Market Share Data in the Context of Conditions of Competition"

#### A. The Commission is Required to Consider Conditions of Competition in its Volume Analysis

The Commission contends that "the statute does not require the Commission to consider the significance of subject import volume in the context of conditions of competition, as that requirement applies only to the Commission's consideration of impact." *Remand Redetermination* at 15, 242R. The Commission argues that "{t}he volume provision of the statute, 19 U.S.C. § 1677(7)(C)(i), instructs the Commission to 'consider whether the volume of imports of the merchandise, or any increase in that volume, either in absolute terms or relative to production or consumption in the United States, is significant,'" but that "{t}his provision makes no mention of conditions of competition." *Id*. at 15 n.49. The Commission argues that only the statutory clause related to impact, not volume or price, refers explicitly to conditions of competition. *See id.*

The Commission's argument suffers from three fatal flaws. First, as the Commission concedes, the statute requires the Commission to consider whether import volume is "significant," a statutory term that necessarily requires context. 19 U.S.C. § 1677(7)(C)(i). The statute expressly requires the Commission to consider import volume "relative to production and consumption in

the United States," two conditions of competition present in every proceeding. 19 U.S.C. § 1677(7)(C)(i). As the Commission has argued earlier in this litigation, it is "well settled" that "the significance of the volume of imports may be affected by the conditions of competition for the industry at issue." *See* Def. Br. at 20, ECF 35. If the significance of import volumes turns on the conditions of competition, as the Commission concedes, then the Commission could not possibly assess whether import volumes are significant without considering such volumes in that context.

Second, as a matter of practice, the Commission routinely considers conditions of competition in its analyses of factors other than impact even when the statute does not direct the Commission to do so. The Court need look no further than the *Majority Views* in this case for an example. There, the Commission determined that underselling was significant "in light of the at least moderate to high degree of substitutability of subject imports from Israel with the domestic like product" and "the importance of price in purchasing decisions for brass rod," the very conditions of competition that the Commission relies on in the *Remand Redetermination*. *Confidential Majority Views* at 58, C.R. 232. The Commission also explained that, even though "prices generally increased" during the POI, prices were suppressed when placed in the context of demand conditions.[1] *Id.* at 61. The Commission regularly considers conditions of competition in metrics such as the cost of goods sold to net sales ratio, which evaluates the potential for price suppression by placing pricing trends in the context of changes in apparent U.S. consumption, as a proxy for demand. *See, e.g.*, *id.* ; *Aluminum Extrusions from China, Colombia, Ecuador, India, Indonesia, Italy, Malaysia, Mexico, South Korea, Taiwan, Thailand, Turkey, United Arab Emirates,*

[1] Notably, the Commission considered the importance of pricing in the *Remand Redetermination*, but it declined to consider demand conditions, despite finding these conditions of competition relevant to its pricing analysis.

*and Vietnam*, Inv. Nos. 701-TA-695-698 and 731-TA-1643-1644 and 1646-1657 (Final), USITC Pub. 5560 (Nov. 2024) at 69 (finding that subject imports did not suppress prices for the domestic like product to a significant degree because "of the domestic industry's increasing sales prices and ability to pass through its increased costs to purchasers through higher prices during the POI"). Thus, in its standard practice, the Commission does not limit its consideration of conditions of competition to its impact analysis. The Court should not permit the Commission to deviate from its practice without explanation. *See, e.g.*, *NMB Sing. Ltd. v. United States*, 557 F.3d 1316, 1328 (Fed. Cir. 2009); *Trustees in Bankr. of N. Am. Rubber Thread Co. v. United States*, 533 F. Supp. 2d 1290, 1297 (Ct. Int'l Trade 2007) (agencies must act consistently with its past practice or articulate a reasoned explanation for departing from that practice).

Finally, regardless of statutory construction, the substantial evidence standard requires the Commission to consider whether import volumes are significant in the context of conditions of competition. As the Court explained, in order "for the Commission's findings under section 1677(7)(C)(i) to be supported by substantial evidence, the Commission must analyze the volume and market share data in the context of conditions of competition." *Opinion and Order* at 16 (quoting *Nippon Steel Corp. v. United States*, 182 F. Supp. 2d 1330, 1335 (Ct. Int'l Trade 2001)). The Court has emphasized "the importance of ensuring that a determination of significant volume is not at odds with findings on the conditions of competition in the domestic industry." *OCP S.A. v. United States*, 658 F.Supp.3d 1297, 1320 (Ct. Int'l Trade 2023). The Commission does not contest that its analysis is required to satisfy the substantial evidence standard.

For these reasons, the Court should not sustain the *Remand Redetermination* without finding that the Commission "analyze{d} the volume and market share data in the context of conditions of competition." *Opinion and Order* at 16.

### B. The Commission Failed to Consider Several Critical Conditions of Competition in its Volume Analysis

In determining that subject import volumes from Israel were significant, the Commission considered two conditions of competition – substitutability and the importance of pricing. *Remand Redetermination* at 17-20, 242R. The Commission incorporated by reference Section VI.B.3 (Substitutability and Other Conditions) of the *Majority Views* and additional hearing testimony by Petitioners. *See id.*; *Confidential Majority Views* at 35-44, C.R. 232. The Commission declined to consider two additional conditions of competition described in the *Majority Views* – supply and demand – as requested by Plaintiff. *See Confidential Majority Views* at 28-35, C.R. 232 (Section VI.B.1, Demand Conditions, and Section VI.B.2, Supply Conditions); *Government of Israel's Comments on the Commission's Forthcoming Remand Redetermination* at 4-10, C.R. 241R/P.R. 223R. The Commission explained in a footnote that it was not required to consider the significance of import volume in the context of supply and demand conditions because it previously considered these conditions of competition in its impact analysis. *Remand Redetermination* at 23-24 n.80, 242R. But the Court has already explained to the Commission that considering conditions of competition in its impact analysis is no substitute for the consideration of such conditions in its volume analysis, and the Commission's failure to do so again on remand is a textbook example of arbitrary and capricious action under *State Farm* and its progeny.

#### 1. The Commission Was Required to Evaluate the Significance of Subject Import Volumes from Israel in the Context of Supply and Demand Conditions

In the *Majority Views*, the Commission laid out three distinct sections regarding conditions of competition: demand considerations, supply considerations, and substitutability and other conditions. *See Confidential Majority Views* at 28-44, C.R. 232. Yet, the Commission on remand elected to consider only one of these three sections (i.e., substitutability and other conditions),

entirely ignoring multiple conditions that the Commission itself found to be important to the brass rod industry. The Commission also found these conditions to be an important part of the record in other contexts in its underlying analysis. For example, when U.S. production and shipments increased during the POI, the Commission considered demand conditions to determine that such gains did not outpace apparent U.S. consumption. *See Confidential Majority Views* at 67, C.R. 232. The Commission is obligated to "consider the record as a whole, including that which fairly detracts from {the conclusion's} weight." *Opinion and Order* at 8 (quoting *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351 (Fed. Cir. 2006). Consistent with this obligation and the *Opinion and Order*, the Commission should have analyzed the significance of the fact that subject imports from Israel comprised a small share of apparent U.S. consumption, never exceeding **[ ]** percent during the POI, among other considerations. *See Opinion and Order* at 18 ("As part of its explanation, the Commission must examine the volume of subject imports in the context of the conditions of competition, particularly as subject imports represent a **[ ]** share of the market than the domestic industry."). The Commission's failure to consider all conditions of competition – including the supply and demand conditions – is therefore unsupported by substantial evidence and inconsistent with the Court's *Opinion and Order*, warranting remand.

Nor can the Commission's consideration of supply and demand conditions in its impact analysis satisfy the requirement to consider these critical conditions of competition in its separate volume analysis. The Commission's volume and impact analyses involve separate statutory provisions with different objectives. *Compare* 19 U.S.C. § 1677(7)(C)(i) *with* 19 U.S.C. § 1677(7)(C)(iii). In its impact analysis, the Commission considered whether supply constraints and changes in apparent U.S. consumption affected the extent to which subject imports from Israel (which the Commission assumed were significant based on a since-remanded volume analysis)

allegedly caused significant negative impact to the domestic industry. *See Confidential Majority Views* at 74-76, C.R. 232; *see infra* Section I.C.2. However, in this analysis, the Commission did not analyze whether import volume is significant, as the statute requires. The Court held that the Commission's volume analysis was unsupported by substantial evidence and ordered the Commission to "provide an adequate explanation of whether the volume of subject imports, or any increase in that volume, either in absolute terms or relative to apparent consumption, is significant." *Opinion and Order* at 18. The Court should not allow the Commission to ignore its request for an additional analysis by claiming that its original determination somehow already satisfies the Court's remand order when the Court remanded the Commission's original determination as a result of this very defect.

### 2. The Record Demonstrates the Critical Importance of Evaluating the Volume of Subject Imports from Israel in the Context of Supply and Demand Conditions

As explained below, it is simply impossible to understand if subject import volume from Israel could be "significant" without considering supply and demand, two conditions of competition that the Commission elsewhere regarded as material in its original and remand determinations. These conditions of competition are embedded in the statutory provision at issue here, which requires the Commission to consider import volume "relative to production or consumption in the United States." 19 U.S.C. § 1677(7)(C)(i). In its original determination, the Commission acknowledged that supply and demand are conditions of competition, describing domestic production and the domestic industry's and subject imports' share of apparent U.S. consumption as "Supply Considerations" and apparent U.S. consumption as "Demand Considerations." *See Confidential Majority Views* at 28-35, C.R. 232.

**NON-CONFIDENTIAL VERSION**

However, without the context of supply and demand, the Commission erroneously concluded on remand that each market participant was capable of shaping the market, such that "seemingly small volumes of sales lost to low-priced subject imports from Israel" materially impacted U.S. producers. *Remand Redetermination* at 25, 242R. But supply conditions provide essential context for understanding the only instances in which subject import volumes from Israel increased during the POI, while demand conditions highlight the vanishingly small role that subject imports from Israel played in the brass rod market. The Commission's failure to address these conditions of competition renders its *Remand Redetermination* unsupported by substantial evidence.

a. Supply Conditions

If the Commission considered supply conditions during the POI – including multiple supply constraints – it could not have determined that the volume of subject imports from Israel was significant in either absolute or relative terms. The Court has previously held that "imported volumes may not be significant if the imported quantities fill demand that the domestic industry is unable to meet 'either because of incapability or lack of viability.'" *OCP S.A. v. United States*, 658 F.Supp.3d 1297, 1320 (Ct. Int'l Trade 2023) (quoting *Altx, Inc. v. United States*, 26 C.I.T. 709, 717 (2002)). While the Commission claims to have considered supply constraints in its impact analysis, it does not dispute that it never considered whether import volume was significant in the context of these supply constraints.

As the Commission has acknowledged, the domestic industry experienced supply constraints during the only two periods in which subject import volumes from Israel increased. From 2020 to 2021, U.S. shipments of imports from Israel increased by **[ ]** pounds, around **[ ]** percent of annual shipment volumes by U.S. producers. *See Confidential Staff Report*

**NON-CONFIDENTIAL VERSION**

at Table C-1, C.R. 218. At the same time, "the domestic industry experienced supply constraints as a result of the COVID-19 pandemic in the 2020-2021 period." *Confidential Majority Views* at 34, C.R. 232. Similarly, from interim 2022 to interim 2023, U.S. shipments of imports from Israel increased by **[ ]** pounds, which "corresponded at most to a few days' U.S. production." *Confidential Staff Report* at Table C-1, C.R. 218; *Confidential Dissenting Views* at 25, C.R. 233. During the same period, **[ ]** that caused the domestic producer to lose "up to **[ ]**." *Confidential Majority Views* at 33, 34, 76 n.299, C.R. 232. The Commission failed to consider the extent to which supply constraints facing U.S. producers from 2020 to 2021 accounted for the simultaneous increase in subject imports from Israel and whether the **[ ]**, which caused **[ ]**, accounted for the small increase in subject import volume from Israel. If the Commission had considered these conditions of competition, it would have been forced to conclude that import volumes from Israel "fill{ed} demand that the domestic industry {was} unable to meet," leading to a determination that such import volumes are insignificant. *OCP S.A. v. United States*, 658 F.Supp.3d 1297, 1320 (Ct. Int'l Trade 2023).

b. <u>Demand Conditions</u>

If the Commission considered demand conditions during the POI – including apparent U.S. consumption and fluctuations in demand – it likewise could not have determined that the volume of subject imports from Israel was significant in either absolute or relative terms. During the POI, U.S. demand for brass rod was substantial relative to subject imports from Israel.

**NON-CONFIDENTIAL VERSION**

| | | Apparent U.S. Consumption (pounds) | U.S. Shipments of Subject Imports from Israel (pounds) | Market Share of Subject Imports from Israel (%) | |
|---|---|---|---|---|---|
| 2020 | [ | | | | ] |
| 2021 | [ | | | | ] |
| 2022 | [ | | | | ] |
| Interim 2023 | [ | | | | ] |

The Commission failed to consider the significance of subject import volumes from Israel and changes to those volumes during the POI. As shown in the table above, apparent U.S. consumption ranged from [ ] pounds to [ ] pounds during the full years of the POI. *Confidential Staff Report* at Table C-1, C.R. 218. By contrast, U.S. shipments of imports from Israel ranged from [ ] pounds to [ ] pounds, a fraction of apparent U.S. consumption. *Id.* Apparent U.S. consumption increased by [ ] pounds from 2020 to 2021, decreased by [ ] pounds from 2021 to 2022, and decreased by [ ] pounds from interim 2022 to interim 2023. *Id.* Each of these changes in apparent U.S. consumption [ ] the total U.S. shipment volume of subject imports from Israel, which peaked at [ ] pounds and increased by only around [ ] pounds over the three full years of the POI. *Id.* Put another way, from interim 2022 to interim 2023, subject imports from Israel increased by only [ ] pounds, which "corresponded at most to a few days' U.S. production" or only [ ] percent of apparent U.S. consumption. *Id.*; *Confidential Dissenting Views* at 25, C.R. 233. The absolute volume numbers, when placed in the context of demand conditions, demonstrate that subject imports from Israel could not have held any real significance within the brass rod market during the POI.

The Commission should also have examined the market share data for U.S. shipments of subject imports from Israel. Subject imports from Israel comprised a small share of apparent U.S. consumption, never exceeding [ ] percent during the POI, and did not change significantly

during the POI – **[ ]** percentage point increase from 2020 to 2022 and **[ ]** percentage point increase over the full POI. *Confidential Staff Report* at Table C-1, C.R. 218. In another context, **[ ]** would be considered inconsequential. The statute provides that imports from a subject country that are below three percent of total imports are deemed negligible and excluded from the Commission's investigation. 19 U.S.C. § 1677(24)(A)(i).

During the POI, U.S. producers supplied the vast majority of U.S. demand, with other subject imports comprising nearly all of the remaining market share. *See Confidential Staff Report* at Table C-1, C.R. 218. The market share of U.S. producers remained above **[ ]** percent during the POI, and other subject imports maintained between **[ ]** percent and **[ ]** percent of market share. *Id*. When combined, U.S. producers and other subject imports accounted for between **[ ]** percent and **[ ]** percent during the POI. *Id*. The volume of subject imports from Israel was so inconsequential that U.S. producers could replace such import volume by diverting export shipments to U.S. sales or selling from inventory. *See id*. Similar to the Commission's negative volume determination in *Carbon Steel Butt-Weld Pipe Fittings*, "{e}ven if the domestic industry increased its sales by the entire amount of the imports from Israel, domestic sales would not have increased significantly." *See Certain Carbon Steel Butt-Weld Pipe Fittings from France, India, Israel, Malaysia, the Republic of Korea, Thailand, the United Kingdom, and Venezuela*, Inv. No. 701-TA-360 and 361 and 731-TA-688 through 695 (Final), USITC Pub. 2870 (Apr. 1995) at I-21; *see also Glass Containers from China*, Inv. No. 701-TA-630 (Final), USITC Pub. 5068 (June 2020) at 33-34 (import volumes were insignificant because "subject imports{'} market share remained essentially flat" during the POI); *Silica Bricks and Shapes from China*, Inv. No. 731-TA-1205 (Final), USITC Pub. 4443 (Jan. 2014) at 17 (import volumes were insignificant where the record showed no "significant increase in shipments of subject imports relative to consumption

over the POI"); *Ball Bearings from China*, Inv. No. 701-TA-989 (Final), USITC Pub. 3593 (Apr. 2003) at 17 (import volume was insignificant where "increases were modest, as was the absolute volume of subject imports in the U.S. market throughout the POI").

If the Commission had considered import volume in the context of demand conditions, as required by the Court, it would have had no choice but to conclude that, in absolute and relative terms, subject imports from Israel remained an inconsequential subset of a large market during the POI.

The Commission's failure to consider supply and demand – two critical conditions of competition that appear elsewhere in the Commission's determination – in its volume analysis renders the *Remand Redetermination* unsupported by substantial evidence and inconsistent with the Court's remand order. Accordingly, the Court should remand for an analysis consistent with the Court's precedent.

**C. The Commission's Remand Redetermination Fails to Give Meaning to the Statutory Term "Significant"**

The Commission's *Remand Redetermination* is also unsupported by substantial evidence, not in accordance with law, and inconsistent with the Court's *Opinion and Order* because it fails to give meaning to the statutory term "significant." According to the statute, the Commission "shall consider whether the volume of imports of the merchandise, or any increase in that volume, either in absolute terms or relative to production or consumption in the United States, is significant." 19 U.S.C. § 1677(7)(C)(i). However, the *Remand Redetermination* fails to establish that the volume of subject imports from Israel was significant due to three fundamental deficiencies in the Commission's analysis: (1) it failed to analyze the volume and market share data on the record, (2) it relied on circular reasoning, and (3) it removed all meaning from the statutory term "significant."

### 1. The Commission Did Not Engage With the Volume and Market Share Data on the Record

In the *Remand Redetermination*, the Commission recited volume and market share data briefly in Section III.C.1, "Data Concerning the Volume of Subject Imports from Israel." *Remand Redetermination* at 16-17, 242R. In this section, the Commission did not apply any analysis, address any conditions of competition, or reach any conclusions. *See id*. The Commission proceeded to conduct its deficient volume analysis in Section III.C.3, "The Volume of Subject Imports from Israel Was Significant in the Context of the Conditions of Competition." *See id*. at 20-26. This analysis is deficient because it does not contain a single reference to the volume and market share data, demonstrating that the Commission has once again failed to grapple with a central aspect of the problem before it.

The Court has held that "{t}he Commission does not comply with its statutory mandate by simply describing various conditions of competition in isolation." *Altx, Inc. v. United States*, 26 C.I.T. 709, 719 (2002). Rather, "for the Commission's findings under 1677(7)(C)(i) to be supported by substantial evidence, the Commission must analyze the volume and market share data in the context of conditions of competition" to determine if subject import volume is significant. *Nippon Steel Corp. v. United States*, 182 F. Supp. 2d 1330, 1335 (Ct. Int'l Trade 2001). A close analysis is "especially crucial" where "subject imports represent a small percentage of market share relative to that held by the domestic industry." *Id.* at 1335.

The Commission's analysis before the Court here is exactly what these opinions seek to avoid. The Commission describes (an incomplete universe of) conditions of competition and reaches broad conclusions without ever engaging with the actual import and market share data. For example, the Commission concluded that "seemingly small volumes of sales lost to low-priced subject imports from Israel led to" reduced market shares, suppressed prices, and lost revenues.

*Remand Redetermination* at 25, 242R. However, the Commission did not explain how the **[ ]** volume of subject imports from Israel was significant enough to cause these substantial changes. *See Confidential Staff Report* at Table C-1, C.R. 218. The Commission's volume analysis cannot be supported by substantial evidence without addressing key facts that place the volume and market share data in context, such as:

- U.S. producers' U.S. shipment volume ranged from **[ ]** pounds to **[ ]** pounds, **[ ]** times to **[ ]** times higher than the peak shipment volume of subject imports from Israel. *See Confidential Staff Report* at Table C-1, C.R. 218; *Confidential Majority Views* at 69, C.R. 232.

- Export shipments by U.S. producers ranged from **[ ]** pounds to **[ ]** pounds, more than **[ ]** times higher than the peak shipment volume of subject imports from Israel. *See Confidential Staff Report* at Table C-1, C.R. 218.

- Ending inventory quantity by U.S. producers ranged from **[ ]** pounds to **[ ]** pounds, more than the peak shipment volume of subject imports from Israel. *See id*.

- Shipment volume of other subject imports ranged from **[ ]** pounds to **[ ]** pounds, nearly **[ ]** times higher than the peak shipment volume of subject imports from Israel. *See id*.

- The market share of subject imports from Israel never exceeded **[ ]** percent, a **[ ]** than the three percent threshold at which the Commission finds imports to be negligible. *See id*.

These data, viewed individually and in their totality, cannot reasonably support a finding that the volume and market share of the Israeli-origin subject imports reached "significant" levels. Because the Commission did not conduct an analysis grappling with these critical aspects of the record before it, the Court should remand for an analysis consistent with the Court's precedent.

### 2. The Commission's Reliance on Its Price and Impact Analyses Resulted in Circular Reasoning

Instead of engaging with the volume and market share data before it, the Commission relied heavily on its price and impact analyses to substitute for serious grappling with those data. The Commission cited these analyses to "conclude that the volume of subject imports from Israel was

significant in the context of the relevant conditions of competition because those conditions of competition enabled that volume to have adverse price effects and a significant adverse impact on the domestic industry." *Remand Redetermination* at 25, 242R. In other words, the Commission determined that, regardless of actual import volume and market share data, subject imports from Israel must have been significant because the domestic industry experienced price effects and a negative impact.

The Commission's reasoning is circular because its price and impact findings rest on an affirmative finding that subject import volumes from Israel were significant, which the Court held to be unsupported by substantial evidence. Several statements in the *Majority Views* make clear that the Commission assumed that the volume of subject imports from Israel was significant as a precondition to its price and impact determinations. For example, the Commission asserted that subject imports were not "too small to have caused any cost-price squeeze experienced by the domestic industry" because underselling and lost sales affected the domestic industry's "ability to raise prices where necessary to address increases in its costs." *Confidential Majority Views* at 63-65, C.R. 232. The Commission also assumed volumes were significant when concluding that "significant and increasing volumes of subject imports from Israel which significantly undersold the domestic like product caused the domestic industry to lose sales and market share to subject imports from Israel and suppressed prices for the domestic like product to a significant degree." *Confidential Majority Views* at 80, C.R. 232. If the volumes of subject imports from Israel were not significant, then the Commission's conclusions about their effects cannot be accurate. By relying on the price and impact analyses in the *Remand Redetermination*, rather than conducting a separate and independent analysis of the significance of import volume data as the Court ordered,

the Commission in an artful dodge effectively relied on its vacated volume determination to conclude that import volumes are significant.

The Commission defends its reliance on the price and impact analyses by repeatedly explaining that they were upheld by the Court, going as far as to assert that "these same conditions of competition rendered the volume of subject imports from Israel significant by enabling that volume to have significant adverse price effects and a significant adverse impact on the domestic industry, as affirmed by the Court." *Remand Redetermination* at 24-25, 242R. But the Court's affirmation of the price and impact determinations does not automatically validate an affirmative volume determination because import volume, price effects, and impact are separate statutory analyses. The Commission has not yet established that volume was significant and has failed to engage with the volume and market share data necessary to make that determination. If the Commission reaches a negative finding of significant volume, the finding would necessarily permeate the Commission's price and impact analyses. Because it indirectly relies on its own vacated volume analysis, the Court should hold that the Commission's *Remand Redetermination* is unsupported by substantial evidence and remand for an analysis consistent with the Court's precedent.

**3. The Commission's Reasoning Fails to Give Meaning to the Statutory Term "Significant"**

For the reasons explained above, the *Remand Redetermination* fails to give meaning to the statutory term "significant." The Court explained in the *Opinion and Order* that, while the statute does not define "significant," the Commission "cannot use this statutory silence as a justification for failing to provide a reasoned analysis of its conclusions." *Opinion and Order* at 17-18. Yet, the Commission effectively did so (again) in the *Remand Redetermination*. As explained above, the Commission failed to engage with the volume and market share data on the record, instead

merely explaining that substitutability and the importance of pricing in the brass rod market renders the volume of subject imports from Israel significant. The Commission did not give any indication of the threshold at which import volumes would become significant under these conditions of competition and implied that import volume would be significant at any level, even if it approached zero. However, under the standard of review, the Commission must "reasonably tie the determination under review to the governing statutory standard and to the record evidence by indicating what statutory interpretations the agency is adopting and what facts the agency is finding." *CS Wind Vietnam Co., Ltd. v. United States*, 832 F.3d 1367, 1377 (Fed. Cir. 2016). Without establishing that the volume of subject imports from Israel exceeded some meaningful threshold, the Commission failed to give meaning to the statutory term "significant." Accordingly, the Court should find that the *Remand Redetermination* is not in accordance with law and order the Commission to conduct an analysis that lawfully applies the statutory standard to the facts of record.

## CONCLUSION

Plaintiff respectfully asks the Court to hold that the Commission's *Remand Redetermination* is unsupported by substantial evidence, not in accordance with law, and inconsistent with the Court's remand order and to remand this matter to the Commission for disposition consistent with the Court's opinion.

Respectfully submitted,

/s/ Bernd G. Janzen

Bernd G. Janzen
Devin S. Sikes
Julia K. Eppard
Daniel M. Witkowski
Sydney L. Stringer
Paul S. Bettencourt
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, NW
Washington, DC 20006

Dated: October 13, 2026

*Counsel to Government of Israel, Ministry of Economy and Industry*

**NON-CONFIDENTIAL VERSION**

## CERTIFICATE OF COMPLIANCE

I, Bernd G. Janzen, an attorney with Akin Gump Strauss Hauer & Feld LLP, certify that Plaintiff's Comments in Opposition to the Commission's Redetermination Pursuant to Court Remand contains 6,767 words (according to the word count feature of the Microsoft Word processing program) and therefore complies with the word count limitation set forth in Paragraph 2(B)(1)(a) of the Standard Chambers Procedures of the Court.

Dated: October 13, 2026

/s/ Bernd G. Janzen
Bernd G. Janzen
AKIN GUMP STRAUSS HAUER & FELD LLP

*Counsel to Government of Israel, Ministry of Economy and Industry*