**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE LISA W. WANG, JUDGE**

| | | |
|---|---|---|
| **GOVERNMENT OF ISRAEL, MINISTRY OF ECONOMY AND INDUSTRY,** | ) | |
| **Plaintiff,** | ) | Court No. 24-00197 |
| **v.** | ) | |
| | ) | **PUBLIC VERSION** |
| **UNITED STATES,** | ) | |
| **Defendant,** | ) | |
| **And** | ) | |
| **AMERICAN BRASS ROD FAIR TRADE COALITION, et al.,** | ) | Confidential Information Deleted from Brackets on Pages 8-10 |
| **Defendant-Intervenors.** | ) | |

---

**COMMENTS IN SUPPORT OF THE COMMISSION'S REMAND DERMINATIONS ON BEHALF OF THE AMERICAN BRASS ROD FAIR TRADE COALITION, MUELLER BRASS CO. AND WIELAND CHASE LLC**

---

Noah A. Meyer, Esq.
Jack A. Levy, Esq.
Daniel J. Calhoun, Esq.
Paul K. Keith, Esq.
**Rock Creek Trade LLP**
900 19th Street, NW
Suite 600
Washington, DC 20006
(202) 230-6630

November 12, 2026

**TABLE OF CONTENTS**

Page

I. INTRODUCTION & BACKGROUND ........ 1

II. STANDARD OF REVIEW ........ 3

III. ARGUMENT ........ 4

A. The Commission's Finding that the Volume of Subject Imports from Israel Was "Significant" Was Supported By Substantial Evidence ........ 4

B. The GOI's Claims Cover Points That Were Already Addressed in the Commission's Volume Analysis or Were Otherwise Already Affirmed by the Court ........ 6

C. The Commission's Remand Determinations Gave Meaning to the Term "Significant" and Complied with the Court's Instruction ........ 8

IV. CONCLUSION ........ 11

# TABLE OF AUTHORITIES

Page(s)

## Statutes

19 U.S.C. § 1516a(b)(1)(B)(i) .......... 3

19 U.S.C. § 1677(7)(C)(i) .......... 2, 5

19 U.S.C. § 1677(24)(A)(i) .......... 9

28 U.S.C. § 2639(a)(1) .......... 4

## Court Decisions

*Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938) .......... 3

*Government of Israel, Ministry of Economy and Industry v. United States*, Slip Op. 26-57, Court No. 24-00197 (June 8, 2026) .......... *passim*

*Matsushita Elec. Indus. Co., Ltd. v. United States*, 750 F.2d 927 (Fed. Cir. 1984) .......... 4

*Nucor Corp. v. United States*, 28 CIT 188, 234, 318 F. Supp. 2d 1207 (2004) .......... 4

*Suramerica de Aleaciones Laminadas, C.A. v. United States*, 44 F.3d 978 (Fed. Cir. 1994) .......... 3

*Timken U.S. Corp. v. United States*, 421 F.3d 1350 (Fed. Cir. 2005) .......... 4

*United States Steel Group v. United States*, 96 F.3d 1352 (Fed. Cir. 1996) .......... 4

*USEC Inc. v. United States*, 34 F. App'x 725 (Fed. Cir. 2002) .......... 4

## Administrative Determinations

*Brass Rod from India*, Inv. Nos. 701-TA-686 (Final), USITC Pub. 5485 (Feb. 2026) .......... *passim*

*Brass Rod from Israel*, Inv. Nos. 701-TA-687 and 731-TA-1614 (Final) (Remand), USITC Pub. 5796 (Sept. 2026) .......... *passim*

*Brass Rod from Israel*, Inv. Nos. 701-TA-687 and 731-TA-1614 (Final), USITC Pub. 5545 (Sept. 2004) .......... 1

Page(s)

*Certain Carbon Steel Butt-Weld Pipe Fittings from France, India, Israel, Malaysia, the Republic of Korea, Thailand, the United Kingdom, and Venezuela*, Inv. No. 701-TA-360 and 361 and 731-TA-688 through 695 (Final), USITC Pub. 2870 (Apr. 1995)........................................... 10

*Glass Containers from China*, Inv. No. 701-TA-630 (Final), USITC Pub. 5068 (June 2020) .... 10

*Silica Bricks and Shapes from China*, Inv. No. 731-TA-1205 (Final), USITC Pub. 4443 (Jan. 2014) ........................................................................................................................ 10

**Legislative Materials**

Statement of Administrative Action to the Uruguay Round Agreements Act, H.R. Rep. No. 103-316, Vol. I (1994)............................................................................................................ 4

## I. INTRODUCTION & BACKGROUND

Pursuant to *Government of Israel, Ministry of Economy and Industry v. United States*, Slip Op. 26-57, Court No. 24-00197 (June 8, 2026) ("*Opinion*"), Defendant-Intervenors American Brass Rod Fair Trade Coalition and its constituent members, Mueller Brass Co. ("Mueller") and Wieland Chase LLC ("Wieland") (collectively, "the Coalition"), submit the following comments in support of the determinations of the U.S. International Trade Commission ("Commission") published in *Brass Rod from Israel*, Inv. Nos. 701-TA-687 and 731-TA-1614 (Final) (Remand), USITC Pub. 5796 (Sept. 2026), P.R. 225R.[1]

By way of background, in September 2024, the Commission issued affirmative final determinations in *Brass Rod from Israel*, Inv. Nos. 701-TA-687 and 731-TA-1614 (Final), USITC Pub. 5545 (Sept. 2004), adopting its reasoning from its earlier determination in *Brass Rod from India*, Inv. No. 701-TA-686 (Final), USITC Pub. 5485.[2] In November 2024, the Government of Israel ("GOI") filed a complaint seeking judicial review of the Commission's determinations and, in May 2025, filed a Rule 56.2 motion for judgment on the agency record challenging various aspects of the Commission's *Final Determinations* relating to subject imports from Israel. The GOI challenged, *inter alia*, aspects the Commission's volume, price, impact, and non-attribution analyses. *See Opinion* at 9.

The Court upheld the Commission's pricing analysis, including its finding that subject imports from Israel suppressed prices for the domestic like product. *See id.* at 23-24. Similarly, the Court upheld the Commission's impact analysis, including its finding that the domestic

---

[1] Citations to the Commission's *Remand Determinations* herein will refer to the Confidential Views of the Commission, ECF Doc. 60 (Sept. 11, 2026), C.R. 242R.

[2] Cites to the Commission's *Final Determinations* herein will refer to the Confidential Views of the Commission concerning *Brass Rod From India*, ECF Doc. 21-1 (Feb. 6, 2024), C.R. 232.

industry's financial performance deteriorated as it lost market share and had its prices suppressed by reason of subject imports from Israel. *See id.* at 26-28. The Court also upheld the Commission's non-attribution analysis, including its finding that supply constraints did not explain the injury it attributed to subject imports from Israel. *See id.* at 30-31.

The Court, however, remanded the Commission's volume analysis as being unsupported by substantial evidence. *See id.* at 16-18. It found that the Commission's proffered explanation concerning the significance of Israeli subject imports volumes — *i.e.*, "findings regarding product substitutability, price as a factor in purchasing decisions, price transparency, and price sensitivity"[3] — were *post hoc* rationalizations and were "missing" from the Commission's *Final Determinations*. *Id.* at 18. The Court instructed the Commission to "provide an adequate explanation of whether the volume of subject imports, or any increase in that volume, either in absolute terms or relative to apparent consumption, is significant … in the context of the conditions of competition." *Id.*

The Commission's *Remand Determinations* complied with the Courts' instruction. In addition to reiterating the *Final Determinations'* discussion of the metrics specified in 19 U.S.C. § 1677(7)(C)(i), the Commission identified the *uncontested* conditions of competition that informed its finding that the volume of subject imports was significant — namely, the substitutability between subject imports and the domestic like product, the importance of and

[3] The Commission had explained that "competition from seemingly small volumes of low-priced subject imports from Israel, and sales lost to such imports, prompted domestic producers to downwardly revise their price lists, or forgo price increases necessary to cover increased costs, affecting their prices to all customers using those price lists, and their revenues from sales to such customers." Commission Response Br. at 21, ECF Doc. 35 (Aug. 15, 2025); *Final Determinations* at 63-64 (responding to an argument "that the *volume* of any lost sales as a result of underselling by subject imports from Israel is too small to have caused any cost-price squeeze experienced by the domestic industry") (emphasis added).

sensitivity to price as a factor purchasing decisions, and the price transparency associated with the domestic industry's use of frequently revised price lists. *See Remand Determinations* at 16-20. Moreover, the Commission explained the significance of Israeli subject import volumes in the context of these conditions of competition and made explicit in the volume analysis of its *Remand Determinations* what had always been implicit in its original analysis. *See id*. at 20-22.

The GOI's comments in opposition to the Commission's *Remand Determinations* spend remarkably little time discussing the volume analysis the Commission actually conducted and, instead, discuss the volume analysis it wished the Commission had conducted. Indeed, the GOI essentially fails to confront the Commission's analysis of why it viewed "seemingly small" volumes of subject imports as significant in the context of an industry that utilizes price lists that reverberate across the industry. Instead, the GOI mistakes the Court's narrow remand as an invitation to relitigate aspects of Commission's *Final Determinations* that were already upheld by the Court. The Court should deny the GOI's attempt to advance arguments beyond the scope of the Court's remand instruction and should instead focus on the analysis the Commission conducted — an analysis that was reasonable and supported by substantial evidence.

## II. STANDARD OF REVIEW

The standard of review requires that the Court uphold an agency determination as lawful unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Suramerica de Aleaciones Laminadas, C.A. v. United States*, 44 F.3d 978, 985 (Fed. Cir. 1994) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The

Commission's determinations are presumed to be correct and the burden is on the party challenging a determination to demonstrate otherwise. *See* 28 U.S.C. § 2639(a)(1).

Furthermore, because the Commission "is presumed to have considered all of the evidence on the record," it is "'not required to explicitly address every piece of evidence presented by the parties'" during an investigation. *See Nucor Corp. v. United States*, 28 CIT 188, 234, 318 F. Supp. 2d 1207, 1247 (2004) (*quoting USEC Inc. v. United States*, 34 F. App'x 725 (Fed. Cir. 2002)). Instead, the Commission need only address the "issues material to {its} determination" so that the "path of the agency may reasonably be discerned." Statement of Administrative Action to the Uruguay Round Agreements Act, H.R. Rep. No. 103-316, Vol. I at 892 (1994); *Timken U.S. Corp. v. United States*, 421 F.3d 1350, 1354-57 (Fed. Cir. 2005).

In addition, a plaintiff may not ask the Court to re-weigh the evidence and decide the case for the Commission. *See Matsushita Elec. Indus. Co., Ltd. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984). The role of the Court is not to question the agency's decisions about the weight or quality of the evidence. *See United States Steel Group v. United States*, 96 F.3d 1352, 1356-57 (Fed. Cir. 1996) (it is the agency's task to evaluate and assign weight to the evidence); *see also Matsushita*, 750 F.2d at 933 (it is not the weight of the evidence, but whether it reasonably supports a rational decision, that is evaluated by a reviewing court). The Court may not substitute its judgment or its interpretation of the evidence for that of the agency. *See Matsushita*, 750 F.2d at 936.

## III. ARGUMENT

### A. The Commission's Finding that the Volume of Subject Imports from Israel Was "Significant" Was Supported By Substantial Evidence

The statute instructs the Commission to consider "whether the volume of imports of the merchandise, or any increase in that volume, either in absolute terms or relative to production or

consumption in the United States, is significant." 19 U.S.C. § 1677(7)(C)(i). The Commission complied with this obligation in Section III.C.1 of its *Remand Determinations*, including a discussion of the import volume, U.S. shipment volume, and market share of subject imports. *See Remand Determinations* at 16-17. *See also Final Determinations* at 45-46 (incorporated by reference). It then identified and expanded upon the uncontested conditions of competition it found relevant in contextualizing the "significance" of subject import volumes in Section III.C.2 — namely, the substitutability between subject imports and the domestic like product, the importance of and sensitivity to price as a factor in purchasing decisions, and the price transparency associated with the domestic industry's use of price lists. *See id.* at 17-20. In Section III.C.3, the Commission went on to explicitly explain why the volume of subject imports it had identified in Section III.C.1 was significant in the context of the conditions of competition it had identified in Section III.C.2, consistent with the Court's instruction.[4] *See id.* at 20-26.

The Commission explained that the substitutability between the domestic like product and subject imports — and the importance of price in purchasing decisions (*i.e.*, price sensitivity) — allowed subject imports to take sales and market share from the domestic industry by almost universally underselling the domestic like product. *See id.* at 20-21. It also elaborated on why the volumes of subject imports from Israel were not "too small" to be considered significant in light of a condition of competition specific to the U.S. brass rod industry — *i.e.*, the prevalent use of frequently updated price lists that reverberate price concessions across several purchaser

[4] The GOI maintains that the Commission must, as a matter of law, consider conditions of competition in the context of its volume analysis. *See* GOI Opposition Comments at 7-9, ECF Doc. 63 (Oct. 13, 2026). Regardless of whether it was statutorily mandated to do so, the Commission did so in its *Remand Determinations* pursuant to the Court's instruction, rendering the issue moot at this juncture. The fact that the Commission preserved its right to appeal this legal issue in no way undermines its compliance with the Court's instruction on remand.

accounts. *See id.* at 21-22. In particular, the Commission explained that, when faced with price competition from subject imports, domestic producers were forced to reduce prices or forgo price increases and that the resulting price concessions were communicated to *all purchasers* buying from that price list. *See id.* at 22.

In other words, the volumes of low-priced subject imports from Israel resulted in pricing pressure that prompted domestic producers to make price concessions that extended to a broad group of U.S. customers. The effects of this dynamic were reflected in the domestic industry's increasing cost of goods sold relative to its net sales, as it was unable to charge prices sufficient to maintain its margins. *See id.* at 24-25. This explanation is reasonable, supported by substantial evidence, and is consistent with the reasoning contained in the Commission's price analysis in its *Final Determinations*. The Court should therefore affirm the Commission's *Remand Determinations*.

**B. The GOI's Claims Cover Points That Were Already Addressed in the Commission's Volume Analysis or Were Otherwise Already Affirmed by the Court**

The GOI claims that the Commission was required to consider "supply and demand" conditions in its volume analysis, *see* GOI Opposition Comments at 12-17 (citing supply constraints, fluctuations in apparent U.S. consumption, subject import volumes, the volume of U.S. shipments of subject imports, and market share data), and contends that "the Commission's failure to consider {these conditions} … in its volume analysis renders the Commission's Remand Redetermination unsupported by substantial evidence and inconsistent with the Court's remand order." *Id.* at 17. This line of argumentation is perplexing, as the GOI highlights either (a) data that the Commission actually ***did*** consider in its volume analysis on remand or (b) conditions addressed in the *Final Determinations'* non-attribution analysis that was already upheld by the Court.

*First*, the Commission considered subject import volumes and fluctuations in those volumes. It also considered U.S. shipment volumes of subject imports and contextualized these volumes in the fluctuations in apparent U.S. consumption during POI, as required when calculating market share. *Remand Determinations* at 16-17.

At its core, the GOI's argument is the same uncontextualized "recitation of metrics" that the Court has already cautioned against. The GOI merely recites metrics and claims that, in its view, subject import volumes are not significant because they are seemingly small, with no regard to how these imports affect the U.S. brass rod market. Moreover, the GOI *makes no attempt to rebut the Commission's explanation* of how substitutable products, the importance of and sensitivity to price in purchasing decisions, and the price transparency associated with the domestic industry's use of price lists allow seemingly small volumes of subject imports to have significant effects in the U.S. brass rod market. The Court should not elevate the GOI's self-serving conclusions over the reasonable analysis contained in the Commission's *Remand Determinations*.

*Second*, the GOI also advances an argument relating to the Commission's refusal to reconsider its analysis of domestic supply constraints — an analysis that had already been upheld by the Court. *See Opinion* at 30. *See also Remand Determinations* at 23 n.80. The GOI claims that "considering {supply constraints} in {the Commission's} impact analysis is no substitute for the consideration of such conditions in its volume analysis." GOI Opposition Comments at 10. Imagine the incongruity that would result if such an argument were accepted. A court could uphold that supply constraints did not explain the relative increase in subject imports while later finding that supply constraints explained the relative increase in subject imports — and the only

distinction being the heading atop the discussion. On its face, this argument should fail and the Court should decline to open this Pandora's box.

### C. The Commission's Remand Determinations Gave Meaning to the Term "Significant" and Complied with the Court's Instruction

The GOI argues that volume analysis contained in the Commission's *Remand Determinations* is flawed because "(1) it failed to analyze the volume and market share data on the record, (2) it relied on circular reasoning, and (3) it removed all meaning from the statutory term 'significant.'" GOI Opposition Comments at 17. The GOI also insinuates that subject imports from Israel were somehow "negligible." *See id*. at 15-16, 19. These arguments should fail.

*First*, the GOI claims that "the Commission did not explain how the [ ] volume of subject imports from Israel was significant enough to cause {price effects}." *Id*. at 19. But as discussed in Section III.A *supra*, the Commission explicitly discussed how the "seemingly small" volumes of subject imports were able to suppress domestic prices. The GOI's unwillingness to meaningfully engage with the Commission's explanation does not undercut the extensive discussion in *Remand Determinations* on this very point.

*Second*, the GOI's claims about circular reasoning rest on the mistaken premise that the Court's remand somehow instructed that subject import volumes were *not significant* and therefore the Commission's downstream analyses of price and impact must necessarily be flawed. *See* GOI Opposition Comments at 20 ("If the volumes of subject imports from Israel were not significant, then the Commission's conclusions about their effects cannot be accurate."). To be clear, the Court did not find — or instruct the Commission to find — that subject import volumes were not significant and in fact upheld the Commission's price, impact, and non-attribution analyses as discussed in Section I *supra*. Moreover, the Commission has

continued to find that subject import volumes are significant in its *Remand Determinations* and references to its still valid and affirmed price and impact analyses do not render its volume analysis in any way circular. Indeed, all that has changed from the Commission's *Final Determinations* is that the Commission has now made explicit the supporting explanations deemed "missing" from its original volume analysis.

*Third*, it is rich that the GOI now claims the Commission is restricted from considering the effects of subject import volumes in analyzing the significance of subject import volumes when the GOI's very first proffered definition of "significant" in its remand comments read, "having or likely to have influence or effect{.}" GOI Comments on Remand at 3, C.R. 241R. The GOI appears to argue that the Commission was required to establish some sort of arbitrary "threshold" after which subject import volumes would become significant. *See* GOI Opposition Comments at 22. The Court has already recognized that "the statute does not … impose a minimum threshold for a finding that subject imports are significant." *Opinion* at 17. As the Commission has complied with the Court's instruction and supplied the additional explanation for its volume analysis, the Court should certainly not impose a bright-line test in this case.

*Finally*, the GOI grossly misrepresents the negligibility standard, stating "{t}he market share of subject imports from Israel never exceeded [ ] percent, a [ ] than the three percent threshold at which the Commission finds imports to be negligible." GOI Opposition Comments at 19. *See also id.* at 15-16 (citing 19 U.S.C. § 1677(24)(A)(i)). By way of clarification, the statute sets the negligibility threshold at "3 percent of the volume of all such merchandise imported into the United States" (*i.e.*, the percent share of all imports of brass rod in the 12 months preceding the filing of the petitions, *not* the market share of those imports during the POI). *See* 19 U.S.C. § 1677(24)(A)(i). This is the

threshold under which Congress deemed the relative volume of subject imports to be too low to warrant investigation and potential remedy. In the underlying investigations, the Commission found that subject imports from Israel accounted for [ ] percent of all brass rod imports in the 12 months preceding the filing of the petitions — *the* [ ] *import share of any subject country in either the AD or CVD investigations*. *Final Determinations* at 15. Here, Israel's share of total brass rod imports was more than over [ ] the minimum threshold to warrant a potential trade remedy.[5]

In sum, the GOI does not address the volume analysis conducted by the Commission, much less satisfy its burden of demonstrating that the Commission's analysis was unsupported by substantial evidence, and instead offers no more than a listing of metrics that it claims should compel a different result. At bottom, the GOI's arguments appear to be little more than a desperate effort to relitigate issues already upheld by the Court. The Court should reject these

---

[5] The GOI cites to various prior Commission determinations that it views as compelling a finding that subject import volumes are not significant in the present investigations. *See* GOI Opposition Comments at 16-17. *Certain Carbon Steel Butt-Weld Pipe Fittings from France, India, Israel, Malaysia, the Republic of Korea, Thailand, the United Kingdom, and Venezuela*, Inv. No. 701-TA-360 and 361 and 731-TA-688 through 695 (Final), USITC Pub. 2870 (Apr. 1995), was already discussed by the Court. *See Opinion* at 15 n.6. Nevertheless, the GOI continues to misunderstand the *sui generis* nature of Commission determinations and, in several citations, misrepresents the Commission's findings. For example, the GOI claims that the Commission found that "import volumes were <u>insignificant</u> because 'subject imports{'} market share remained essentially flat' during the POI." GOI Opposition Comments at 16 (quoting *Glass Containers from China*, Inv. No. 701-TA-630 (Final), USITC Pub. 5068 (June 2020) at 33-34 (emphasis added)). But in that investigation, the Commission found that "the volume subject imports <u>was significant</u> in absolute terms and relative to apparent consumption in the United States during the POI." *Glass Containers from China*, USITC Pub. 5068 at 23 (emphasis added). The GOI similarly misrepresents that the Commission found that subject import volumes were <u>not significant</u> in *Silica Bricks and Shapes from China*. *See* GOI Opposition Comments at 16-17 (quoting Inv. No. 731-TA-1205 (Final), USITC Pub. 4443 (Jan. 2014) at 17). But here again, the Commission very much found that subject import volumes <u>were significant</u>. *See Silica Bricks and Shapes from China*, USITC Pub. 4443 at 17.

arguments and assess the reasonableness of the Commission's volume analysis on its own merits, instead of elevating the GOI's interpretation of the record over that of the Commission.

## IV. CONCLUSION

The Commission's volume analysis in its *Remand Determinations* was reasonable, supported by substantial evidence, and complied with the Court's instruction. Accordingly, for the foregoing reasons, the Coalition asks the Court to affirm the Commission's *Remand Determinations* in their entirety.

Sincerely,

Noah A. Meyer, Esq.
Jack A. Levy, Esq.
Daniel J. Calhoun, Esq.
Paul K. Keith, Esq.

**ROCK CREEK TRADE LLP**

**Certificate of Compliance with Chambers Procedures 2(B)(1)**

The undersigned hereby certifies, pursuant to Chambers Procedures 2(B)(1)(b) and (2), the foregoing brief contains 3,836 words, exclusive of the caption block, table of contents, table of authorities, signature block, and certificates of counsel, and therefore complies with the maximum word count limitation set forth in the Standard Chambers Procedures of the U.S. Court of International Trade.

By: /s/ Noah A. Meyer

Noah A. Meyer