*NONCONFIDENTIAL VERSION*

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE LISA W. WANG, JUDGE**

Court No. 24-00197

GOVERNMENT OF ISRAEL, MINISTRY OF ECONOMY AND INDUSTRY,

*Plaintiff*,

v.

UNITED STATES,

*Defendant*,

and

AMERICAN BRASS ROD FAIR TRADE COALITION, et al.,

*Defendant-Intervenors*.

# DEFENDANT U.S. INTERNATIONAL TRADE COMMISSION'S NONCONFIDENTIAL COMMENTS IN SUPPORT OF REMAND DETERMINATIONS

JOHN D. HENDERSON
Attorney-Advisor
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Telephone: (202) 205-2130
Facsimile: (202) 205-3111
john.henderson@usitc.gov

MARGARET D. MACDONALD
General Counsel
Telephone: (202) 205-2561
margaret.macdonald@usitc.gov

KARL S. VON SCHRILTZ
Assistant General Counsel for Litigation
Telephone: (202) 205-3096
karl.von-schriltz@usitc.gov

**DATED: November 12, 2026**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iii

**I. SUMMARY OF THE ARGUMENT ........ 1**

**II. STANDARD OF REVIEW ........ 4**

**III. BACKGROUND ........ 6**

**IV. ARGUMENT ........ 12**

A. The Commission's Remand Determination Is Supported by Substantial Evidence and in Full Compliance with the Court's Remand Instructions ........ 12

B. Plaintiff's Arguments Are Without Merit ........ 18

1. The Commission Considered Supply and Demand Conditions ........ 18

2. The Commission's Remand Views Give Meaning to the Term "Significant" ........ 21

3. The Commission Considered the Conditions of Competition in Accordance with the Remand Instructions ........ 25

**V. CONCLUSION ........ 27**

**TABLE OF AUTHORITIES**

**Cases** **Page(s)**


*Altx, Inc. v. United States*,
370 F.3d 1108 (Fed. Cir. 2004)....................5

*Chemours Co. FC, LLC v. United States*,
492 F. Supp. 3d 1333 (Ct. Int'l Trade 2021) ....................4

*Consolo v. Fed. Mar. Comm'n*,
383 U.S. 607 (1966)....................4, 5

*Copperweld Corp. v. United States*,
12 CIT 148, 682 F. Supp. 552 (1988) ....................21

*Goss Graphics Sys., Inc. v. United States*,
22 CIT 983, 33 F. Supp. 2d 1082 (1998), *aff'd*, 216 F.3d 1357 (Fed. Cir. 2000) ....................6

*Grupo Industrial Camesa v. United States*,
85 F.3d 1577 (Fed. Cir. 1996)....................5

*Hitachi Metals, Ltd. v. United States*,
350 F. Supp. 3d. 1325 (Ct. Int'l Trade 2018), *aff'd*, 949 F.3d 710 (Fed. Cir. Feb. 7, 2020) ....................26

*Hitachi Metals, Ltd. v. United States*,
949 F.3d 710 (Fed. Cir. 2020)....................5

*Hynix Semiconductor Inc. v. United States*,
30 CIT 1208, 431 F. Supp. 2d 1302 (2006) ....................14, 20, 24

*JMC Steel Grp. v. United States*,
70 F. Supp. 3d 1309 (Ct. Int'l Trade 2015) ....................6

*Nippon Steel Corp. v. United States*,
25 CIT 1415, 182 F. Supp. 2d 1330 (Ct. Int'l Trade 2001) ....................10, 14, 24, 25

*Nippon Steel Corp. v. United States*,
458 F.3d 1345 (Fed. Cir. 2006)....................5, 6

*Nucor Corp. v. United States*,
414 F.3d 1331 (Fed. Cir 2005)....................21

*Seafood Exporters Ass'n of India v. United States*,
No. 25-00031, Slip Op. 26-106, 2026 WL 2629941 (Ct. Int'l Trade Sept 4, 2026) ....................25

**TABLE OF AUTHORITIES**

**Cases (cont'd)** **Page(s)**

*Shandong TTCA Biochem. Co., Ltd. v. United States*,
35 CIT 545, 774 F. Supp. 2d 1317 (2011) ....................6

*Siemens Energy, Inc. v. United States*,
806 F.3d 1367 (Fed. Cir. 2015)....................4, 5

*Tenaris Bay City, Inc. v. United States*,
789 F. Supp. 3d 1352 (Ct. Int'l Trade 2025), *appeal pending*, No. 2025-2034
(Fed. Cir. filed Aug. 20, 2025)....................25, 27

*U.S. Steel Grp. v. United States*,
96 F.3d 1352 (Fed. Cir. 1996)....................5

*Universal Camera Corp. v. NLRB*,
340 U.S. 474 (1951)....................4, 5

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i)....................4

19 U.S.C. § 1677(7)(C)(i)....................10, 19, 25

19 U.S.C. § 1677(7)(C)(iii)....................25

19 U.S.C. § 1677(7)(G)(ii)(IV)....................8

19 U.S.C. § 1677(7)(G)(iii)....................7

19 U.S.C. § 1677(24)....................19, 20

28 U.S.C. § 2639(a)(1)....................4

**USITC Publications**

*Ball Bearings from China*,
Inv. No. 701-TA-989 (Final), USITC Pub. 3593 (Apr. 2003)....................21

*Certain Carbon Steel Butt-Weld Pipe-Fittings from France, India, Israel, Malaysia, the Republic of Korea, Thailand, the United Kingdom, and Venezuela*,
Inv. Nos. 701-TA-360-361 & 731-TA-688-695 (Final), USITC Pub. 2870
(Apr. 1995)....................21

*Glass Containers from China*,
Inv. No. 701-TA-630 (Final), USITC Pub. 5068 (June 2020)....................21

## TABLE OF AUTHORITIES

**USTIC Publications (cont'd)** **Page(s)**

*Silica Bricks and Shapes from China*,
Inv. No. 731-TA-1205 (Final), USITC Pub. 4443 (Jan. 2014)...............................................21

**Legislative History Materials**

H.R. Rep. 96-317, 96th Cong., 1st Sess. (1979) ........................................................................14, 24

Defendant U.S. International Trade Commission ("Commission") hereby opposes Plaintiff's challenges to the Commission's affirmative remand determinations in *Brass Rod from Israel*, Inv. Nos. 701-TA-687 and 731-TA-1614 (Final) (Remand), Dkt. No. 59 (CR242R) (hereinafter "*Remand Views*") (public version at Dkt. No. 60) (PR226R), as well as all remaining challenges to findings in the Commission's Original Determinations, *Brass Rod from Israel*, Inv. Nos. 701-TA-687 and 731-TA-1614 (Final), USITC Pub. No. 5545 (Sept. 2024) (PR215); *Brass Rod from India,* Inv. No. 701-TA-686 (Final), USITC Pub. 5485 (Feb. 2024) (PR172). Because the Commission's remand determinations are supported by substantial evidence, in accordance with law, and in full compliance with this Court's remand instructions, the Court should affirm them.

## I. SUMMARY OF THE ARGUMENT

In accordance with the Court's remand instructions, the Commission examined in its *Remand Views* the volume of subject imports from Israel in the context of the conditions of competition in the U.S. brass rod industry. The conditions of competition that the Commission identified in the *Remand Views* as especially pertinent to its volume analysis, including domestic producers' use of published price lists that are frequently revised in light of market conditions and lost sales, substitutability, the importance of price in purchasing decisions, price sensitivity and price transparency, are undisputed by Plaintiff. Moreover, the Commission's findings regarding the influence of these conditions of competition on the significance of seemingly small volumes of subject imports from Israel are supported by substantial evidence on the record, including extensive sworn hearing testimony by industry witnesses and documentary evidence of domestic producers' price lists. This evidence is likewise undisputed and uncontested by Plaintiff.

The Commission explained how "seemingly small" volumes of subject imports from Israel had significant adverse effects on the domestic industry's prices and a significant adverse impact on the domestic industry. It explained, after having thoroughly discussed these conditions of competition, that "seemingly small" volumes of sales lost to low-priced subject imports from Israel led to a market share shift and suppressed domestic prices to a significant degree by forcing domestic producers to revise their price lists by cutting prices, or forgoing needed price increases, to all customers using the price lists, thereby reducing the domestic industry's revenues. *Remand Views* at 25. In light of the Commission's findings of the adverse price effects and significant adverse impact of subject imports from Israel on the domestic industry under these conditions of competition, which were affirmed by the Court, the Commission explained that the volume of subject imports from Israel was significant in that it was sufficient to cause adverse price effects and an adverse impact on the industry, *Id.* at 23-24, consistent with Plaintiff's own definition of the term "significant" to mean "having or likely to have influence or effect." Plaintiff's Remand Comments at 3-4 (CR241). Thus, the Commission's findings that, in the context of the conditions of competition, the volume of subject imports from Israel is significant in absolute terms and relative to consumption in the United States, and that the increase in that volume is significant in absolute terms, are supported by substantial evidence and in accordance with law, and in full compliance with this Court's remand instructions.

Plaintiff's challenges to the Commission's determination are unavailing. Plaintiff contests none of the conditions of competition that enabled the volume of subject imports from Israel to have adverse price effects and an adverse impact on the domestic industry, as the Commission observed in the *Remand Views*, and therefore cannot seriously argue that those

conditions did not render that volume significant under Plaintiff's own definition of the term. Despite the undisputed substantial evidence supporting the Commission's findings, Plaintiff impermissibly seeks to have the Court reweigh the evidence, and disregard the evidence supporting the Commission's Remand Determination.

Ignoring the Commission's actual analysis of the conditions of competition, Plaintiff argues that the Commission overlooked certain supply and demand conditions that Plaintiff contends show that the volume of subject imports from Israel was not significant. However, the Commission considered supply and demand conditions in its Remand Views, adopting the extensive discussion of them from the Original Views by reference. Moreover, the Commission specifically addressed the alleged domestic supply constraints raised by Plaintiff, referencing the Commission's rejection of similar arguments made by the Israeli respondent in the Original Determinations that was specifically upheld by this Court. Thus, the Commission reasonably declined the invitation to revisit the exact same issues it had previously addressed in full and on which it had been sustained by this Court.

While Plaintiff argues that the Commission's Remand Determination failed to give meaning to the statutory term "significant," the Commission explained that the volume of subject imports from Israel was significant based on Plaintiff's own definition of the term, "having or likely to have influence or effect," in being sufficient to have significant adverse price effects and a significant impact on the domestic industry. *Remand Views* at 12, 23-24; Plaintiff's Remand Comments at 3-4 (CR241). Contrary to Plaintiff's argument that the Commission did not explain how the volume of subject imports from Israel was significant enough to cause these substantial changes, the Commission explained:

> {S}eemingly small volumes of sales lost to low-priced subject imports from Israel led to a market share shift and suppressed

> domestic prices to a significant degree by forcing domestic producers to revise their price lists by cutting prices or forgoing needed price increases to all customers using the price lists, thereby reducing the industry's revenues."

*Remand Views* at 25. Nor is there anything circular about the Commission's reasoning in this regard. Had the Commission's price and impact findings been dependent on the Commission's finding of significant volume, as Plaintiff mistakenly argues, the Court would not have affirmed those findings after holding the Commission's volume finding deficient.

Accordingly, we respectfully request that this Court affirm the Commission's remand determinations.

## II. STANDARD OF REVIEW

Under the Tariff Act of 1930, this Court must uphold the Commission's determinations, findings, and conclusions unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i); *see also Chemours Co. FC, LLC v. United States*, 492 F. Supp. 3d 1333, 1335 (Ct. Int'l Trade 2021). The Commission's determinations are presumed to be correct, and the burden is on the party challenging the determination to demonstrate otherwise. 28 U.S.C. § 2639(a)(1).

The Supreme Court has defined "substantial evidence" as being "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951). Substantial evidence is "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). Even if "individual Commissioners reach{} divergent conclusions, '{t}he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding

from being supported by substantial evidence.'" *Siemens Energy, Inc. v. United States,* 806 F.3d 1367, 1372 (Fed. Cir. 2015) (quoting *Consolo*, 383 U.S. at 620); *see also Grupo Industrial Camesa v. United States*, 85 F.3d 1577, 1582 (Fed. Cir. 1996) ("Although {a party} points to evidence supporting the dissenting commissioners' decision that the domestic industry was not materially injured, this does not mean that the Commission's affirmative determination is unsupported by substantial evidence.") (citing *Consolo*, 383 U.S. at 619-20). Indeed, the Federal Circuit has explained, "in the hierarchy of the four most common standards of review, substantial evidence is the second most deferential, and can be translated roughly to mean, 'is {the determination} unreasonable?'" *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351 (Fed. Cir. 2006) (citation omitted). Thus, under the substantial evidence standard, a court may not, "even as to matters not requiring expertise … displace the {agency's} choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Universal Camera*, 340 U.S. at 488. Rather, a court '"must affirm a Commission determination if it is reasonable and supported by the record as a whole, even if some evidence detracts from the Commission's conclusion.'" *Hitachi Metals, Ltd. v. United States*, 949 F.3d 710, 716 (Fed. Cir. 2020) (quoting *Altx, Inc. v. United States*, 370 F.3d 1108, 1121 (Fed. Cir. 2004)).

The Commission is the trier of fact in injury investigations. As such, "{i}t is the Commission's task to evaluate the evidence it collects during its investigation" and "{c}ertain decisions, such as the weight to be assigned a particular piece of evidence, lie at the core of that evaluative process." *U.S. Steel Grp. v. United States*, 96 F.3d 1352, 1357 (Fed. Cir. 1996); *Nippon Steel*, 458 F.3d at 1350. Accordingly, the Commission has "discretion to make reasonable interpretations of the evidence and to determine the overall significance of any

particular factor in its analysis." *Goss Graphics Sys., Inc. v. United States*, 22 CIT 983, 1004, 33 F. Supp. 2d 1082, 1100 (1998), *aff'd*, 216 F.3d 1357 (Fed. Cir. 2000). As the Federal Circuit has made clear, if "the totality of the evidence does not illuminate a black-and-white answer to a disputed issue, it is the role of the expert factfinder – here the majority of the Presidentially-appointed, Senate-approved Commissioners – to decide which side's evidence to believe." *Nippon Steel*, 458 F.3d at 1359.

"When evaluating challenges to the ITC's choice of methodology," the Court has explained, "the court will affirm the chosen methodology as long as it is reasonable." *JMC Steel Grp. v. United States*, 70 F. Supp. 3d 1309, 1316-17 & n.4 (Ct. Int'l Trade 2015) (*citing Shandong TTCA Biochem. Co., Ltd. v. United States*, 35 CIT 545, 556, 774 F. Supp. 2d 1317, 1327 (2011)).

## III. BACKGROUND

The American Brass Rod Fair Trade Coalition and its individual members, Mueller Brass Co. ("Mueller") and Wieland Chase LLC ("Wieland") (collectively, "Petitioners" or "Defendant-Intervenors") filed petitions on imports of brass rod from Brazil, India, Israel, Mexico, South Africa, and South Korea on April 27, 2023. PR1. The Commission's final phase investigation schedules became staggered when the U.S. Department of Commerce ("Commerce") postponed almost all of its final determinations with respect to the six subject countries, but did not postpone its final countervailing duty determination with respect to India, as to which Commerce made an affirmative determination in December 2023. In addition, Commerce tolled the deadlines for its final antidumping and countervailing duty determinations with respect to Israel for an additional 90 days. *See Remand Views* at 3.

Accordingly, the Commission made three sets of determinations in these investigations.[1] In the leading investigation, *Brass Rod from India,* Inv. No. 701-TA-686 (Final), USITC Pub. 5485 (Feb. 2024) (PR172) ("leading investigation"), the Commission made an affirmative final determination with respect to subject imports from India based on a cumulated analysis of subject imports from Israel and all other subject countries. Following additional final determinations by Commerce in April 2024, the Commission issued additional affirmative final determinations in the first trailing investigations in *Brass Rod from Brazil, India, Mexico, South Africa, and South Korea*, Inv. Nos. 701-TA-688 and 731-TA-1612-1613 and 1615-1617 (Final), USITC Pub. 5513 (June 2024) (PR197), adopting its reasoning from *Brass Rod from India*.

Following Commerce's final affirmative final antidumping and countervailing duty determinations with respect to Israel in July 2024, the Commisison issued affirmative final determinations with respect to Israel in the second trailing investigations on September 19, 2024, in *Brass Rod from Israel,* Inv. Nos. 701-TA-687, 731-TA-1614 (Final), USITC Pub. 5545 (Sept. 2024) (PR215), adopting its reasoning from *Brass Rod from India*. In accordance with the statute for trailing investigations, the Commission specifically adopted its findings and analysis from the determination and views in the leading investigation "with respect to the issues of domestic like product, domestic industry, cumulation (including material injury by reason of subject imports from Israel), conditions of competition, and material injury by reason of cumulated subject imports." *Brass Rod from Israel,* USITC Pub. 5545 at 6 (PR215). In all three

[1] The statutory cumulation provision for staggered investigations provides that the Commission must make its determinations for each investigation based on the record compiled in the leading investigation, and that the record for each such investigation shall be the same, except that prior to the Commission's determinations in the trailing investigations, it shall include in the record Commerce's later final antidumping and countervailing duty determinations and the parties' final comments concerning Commerce's later determinations. 19 U.S.C. § 1677(7)(G)(iii).

proceedings, Commissioners Karpel, Kearns, and Schmidtlein reached affirmative determinations, while Commissioner Johanson dissented and made negative determinations.

Before cumulating subject imports in the leading investigation with respect to India, the Commission had to determine in that investigation whether subject imports from Israel were eligible for cumulation with subject imports from the other five subject countries. The Commission applied the statutory cumulation provision with respect to Israel, which provides that the Commission may only cumulate subject imports from Israel with subject imports from other countries for purposes of its material injury determination if it first determines that subject imports from Israel, considered alone, materially injured or threatened with material injury the domestic industry. 19 U.S.C. § 1677(7)(G)(ii)(IV). In the leading investigation, the Commission determined that the domestic industry was materially injured by reason of subject imports from Israel taken alone.[2] The Commission then cumulated subject imports from Israel with imports from the other five subject countries (Brazil, India, Mexico, South Africa, and South Korea), and determined that the domestic industry was materially injured by reason of cumulated subject imports.

On November 22, 2024, Plaintiff Government of Israel, Ministry of Economy and Industry filed a complaint after commencing an action to contest the Commission's final injury determinations with respect to Israel. While Plaintiff challenged the Commission's affirmative determinations with respect to Israel in the second trailing investigations, the relevant findings

---

[2] The public version of the leading investigation is *Brass Rod from India,* Inv. No. 701-TA-686 (Final), USITC Pub. 5485 (Feb. 2024) (PR172) ("*Original Public Views*"), with relevant portions relating to the Commission's determination with respect to Israel at pages 13-61. Relevant portions of the Commission's Confidential Views in the leading investigation (CR232) ("*Original Confidential Views*") are at pages 16-82.

and analysis that Plaintiff challenged are contained in the Commission's Views in the leading investigation.

On June 8, 2026, the U.S. Court of International Trade, per Judge Lisa W. Wang, issued an opinion granting in part and denying in part Plaintiff's Rule 56.2 motion for judgment on the agency record. *Government of Israel, Ministry of Economy and Industry v. United States*, Court No. 24-00197, 2026 WL 1972194, Slip Op. 26-57 (Ct. Int'l Trade June 8, 2026) ("Slip Op."). The Court affirmed the Commission's determination on all issues except the Commission's volume analysis. It upheld the Commission's treatment of information from outside the Commission's January 2020 to September 2023 period of investigation ("POI") in its present material injury analysis. *Id.* at 9-14. The Court found that the Commission's pricing analysis was supported by substantial evidence, finding that the price-based adjustment that the Commission used in its analysis of underselling by subject imports from Israel was supported by substantial evidence. *Id.* at 18-21. Similarly, it found that the Commission's finding that subject imports from Israel caused negative price effects was supported by substantial evidence. *Id.* at 21-24.[3] In addition, the Court found that the Commission's finding that subject imports from Israel had a negative impact on the domestic industry was supported by substantial evidence. *Id.* at 25-28. Finally, it found that the Commission's non-attribution analysis and the Commission's

[3] In upholding the Commission's price effects analysis, this Court found that the Commission reasonably rejected the argument by Israeli respondent Finkelstein Metals Ltd. ("Finkelstein") that the volume of any lost sales due to underselling was too small to have suppressed domestic prices, in light of the Commission's findings of the price transparency and price sensitivity of the U.S. brass rod market, and the domestic producers' reporting that sales lost to subject imports from Israel forced them to revise their price lists by either cutting prices or forgoing needed price increases to avoid further lost sales, affecting domestic producers' revenues from sales to all customers using the price lists. Slip Op. at 23-24 (citing *Original Public Views* at 48-50); *see Original Confidential Views* at 63-66.

finding that the domestic industry was materially injured by reason of subject imports from Israel, were supported by substantial evidence. *Id.* at 28-31.[4]

The Court remanded the Commission's determinations, however, because it found that the Commission's volume analysis was not supported by substantial evidence. *Id.* at 14-18. Specifically, the Court found that the Commission "failed to draw a rational connection between the record evidence and why subject imports were 'significant'" and "fail{ed} to link its conclusion regarding the significance of the volume of subject imports to the conditions of competition of the affected industry." *Id.* at 16. The Court explained that

> In order "for the Commission's findings under Section 1677(7)(C)(i) {*i.e.,* the volume provision} to be supported by substantial evidence, the Commission must analyze the volume and market share data in the context of conditions of competition. This is especially crucial where, as here, subject imports represent a small percentage of market share relative to that held by the domestic industry."

*Id*. (quoting *Nippon Steel Corp. v. United States*, 25 CIT 1415, 1420; 182 F. Supp. 2d 1330, 1335 (Ct. Int'l Trade 2001)).

The Court found that the explanation in the Commission's litigation brief that the Commission's findings regarding certain conditions of competition in the U.S. brass rod market – product substitutability, price as a factor in purchasing decisions, price transparency, and price sensitivity -- supported its conclusion that the volume of subject imports from Israel was

---

[4] In upholding the Commission's non-attribution analysis, this Court upheld the Commission's findings addressing and dismissing Finkelstein's arguments about alleged domestic industry supply constraints as a result of COVID-19 and a fire at a domestic producer's plant. The Court stated that "the Commission sufficiently addressed significant arguments about the impact of supply constraints, or lack thereof, on the domestic industry. … As part of this discussion, the Commission directly addressed, and dismissed, arguments regarding domestic producers' inability to meet domestic demand increase." Slip Op. at 30 (citations omitted).

significant was a "post-hoc rationalization," because this explanation was missing from the volume discission in the Commission's *Original Views*. *Id.* at 18.

The Court instructed that "{o}n remand, the Commission must provide an adequate explanation of whether the volume of subject imports, or any increase in that volume, either in absolute terms or relative to apparent consumption is significant." *Id.* at 18. It further instructed that "{a}s part of its explanation, the Commission must examine the volume of subject imports in the context of the conditions of competition, particularly as subject imports represent a [ [redacted] ] share of the market than the domestic industry." *Id.* at 18.

On July 17, 2026, the Commission published notice of its remand proceeding in the Federal Register. *Brass Rod from Israel*, 91 Fed. Reg. 44872 (July 17, 2026) (PR221R). On August 3, 2026, remand comments were filed by Defendant-Intervenors, the American Brass Rod Fair Trade Coalition and its individual members Mueller and Wieland (CR240R), and by Plaintiff, the Government of Israel, Ministry of Economy and Industry (CR241R).

On September 11, 2026, the Commission filed its *Remand Views* with the Court, reflecting the views of Chairman Doyle and Commissioners Kearns and Pappas. Dkt. No. 59 (CR242R).[5] The Commission adopted the Commission's original findings, analysis, and conclusions from the Original Determinations in their entirety with respect to those issues not subject to appeal, or affirmed by the Court, including domestic like product, domestic industry,

[5] Chairman Doyle and Commissioner Pappas, who were not members of the Commission at the time of the Original Determinations, reviewed *de novo* the record from the original investigations. For purposes of the remand proceedings, in addition to joining in full the *Remand Views*, Chairman Doyle and Commissioner Pappas specifically adopted all findings from the Original Determinations that were not modified therein. *Remand Views* at 8 & n.20. Former Commissioners Johanson, Karpel, and Schmidtlein, who had participated in the Original Determinations, were no longer members of the Commission at the time of the remand vote and thus did not participate in the *Remand Views*.

negligibility, legal standards, conditions of competition, price effects of subject imports from Israel, and impact of subject imports from Israel. *Remand Views* at 8, 20. The Commission also adopted the findings, analysis, and conclusions in the Original Determinations with respect to the volume of subject imports from Israel, as supplemented by the analysis in the *Remand Views*. *Remand Views* at 8. In addition to adopting the original findings, analysis, and conclusions with respect to conditions of competition from the Original Determinations, the Commission also addressed and supplemented those findings in the *Remand Views* with respect to certain conditions of competition of particular relevance to the Commission's volume analysis. *Remand Views* at 17.

After considering the volume of subject imports from Israel in the context of the conditions of competition in the U.S. brass rod market, the Commission again found that the volume of subject imports from Israel is significant in absolute terms and relative to consumption in the United States, and that the increase in that volume is significant in absolute terms. *Remand Views* at 16.

On October 13, 2026, Plaintiff filed comments in opposition to the Commission's *Remand Views*. Plaintiff's Remand Response, Dkt. Nos. 63-64 ("Plaintiff's Resp.").

## IV. ARGUMENT

### A. The Commission's Remand Determination Is Supported by Substantial Evidence and in Full Compliance with the Court's Remand Instructions

In accordance with the Court's Remand instructions, the Commission analyzed the volume of subject imports from Israel in the context of the conditions of competition in the U.S. brass rod industry, again finding that the volume of subject imports from Israel is significant in absolute terms and relative to consumption in the United States, and that the increase in that volume is significant in absolute terms. *Remand Views* at 16.

The Commission's findings with respect to the volume of subject imports from Israel in the context of the conditions of competition were reasonable and supported by substantial evidence. With respect to the volume "metrics,"[6] the Commission found that the volume of subject imports from Israel increased by [ [redacted] ] percent from 2020 to 2022,[7] reaching a high of [ [redacted] ] pounds in 2021,[8] both [ [redacted] ] numbers in absolute terms. *Id.* at 16. The Commission found that the market share of subject imports ranged from [ [redacted] ] percent to [ [redacted] ] percent during the full years of the POI, and reached a high of [ [redacted] ] percent during interim 2023, compared with [ [redacted] ] percent in interim 2022. *Id.* at 16-17. Moreover, the Commission found that the market share of subject imports from Israel in sales to distributors ranged from

---

[6] We recognize the Court's statement that "the recitation of metrics does not provide a sufficient basis for evaluating whether the volume of subject imports was "significant,' particularly when such imports represent a small percentage of market share relative to that held by the domestic industry." Slip Op. at 17. Accordingly, in the *Remand Views*, the Commission discussed the volume of subject imports in the context of the conditions of competition in the U.S. brass rod market, in accord with the Court's remand instructions.

[7] In addition, the Commission found that the volume of subject imports was [ [redacted] ] percent higher in interim 2023 (*i.e.*, January-September 2023) than in interim 2022 (i.e., January-September 2022). *Remand Views* at 16. Plaintiff incorrectly asserts that "from interim 2022 to interim 2023, subject imports from Israel increased by only [ [redacted] ] pounds." Plaintiff's Resp. at 15. However, the record shows, and the Commission found, that the volume of subject imports from Israel was [ [redacted] ] pounds in interim 2023 compared with [ [redacted] ] pounds in interim 2022, indicating that the volume of subject imports was [ [redacted] ] pounds higher in interim 2023 compared with interim 2022, not [ [redacted] ] pounds, as Plaintiff asserts. *Remand Views* at 16.

[8] The volume of subject imports from Israel increased from [ [redacted] ] pounds in 2020 to [ [redacted] ] pounds in 2021 before declining to [ [redacted] ] pounds in 2022; it was [ [redacted] ] pounds in interim 2023, compared with [ [redacted] ] pounds in interim 2022. *Remand Views* at 16.

[[redacted]] percent to [[redacted] ] percent during the full years of the POI, and was [ [redacted] ] percent in interim 2023, compared with [ [redacted] ] percent in interim 2022. *Id.* at 17 n.56.[9]

The overall market share of subject imports from Israel, which was smaller than that of the domestic industry, may have suggested that the volume of those imports was "seemingly small,"[10] but as the Commission explained, in the context of the relevant conditions of competition, these volumes of subject imports from Israel led to significant adverse price effects and a significant adverse impact for the domestic industry, and were significant in the three respects found by the Commission. *Remand Views* at 25-26.

Ignoring the Commission's actual discussion of the conditions of competition in its *Remand Views*, Plaintiff inexplicably states that the Commission considered only two conditions of competition -- "substitutability and the importance of pricing" -- in its analysis in its *Remand Views*. Plaintiff's Resp. at 4, 10. While the Commission unquestionably made findings regarding substitutability and the importance of price in purchasing decisions for brass rod, *Remand Views* at 17-18 & nn.59-60,[11] Plaintiff overlooks the extensive discussion, supported by sworn witness testimony, regarding the domestic industry's use of frequently revised published

---

[9] The Commission found that the majority of subject imports from Israel during the POI were sold to distributors. *Original Confidential Views* at 51; *Original Public Views* at 38.

[10] Congress and this Court have similarly referred to how an "apparently small" volume of imports can be significant in some industries. "Congress has specified that 'for one industry, an apparently small volume of imports may have a significant impact on the market, for another the same volume may not be significant.'" *Nippon Steel*, 25 CIT at 1419; 182 F. Supp. 2d at 1335 (quoting H.R. Rep. 96-317, 96th Cong., 1st Sess., at 381, 474 (1979)); *Hynix Semiconductor I*nc. v. United States, 30 CIT 1208, 1212; 431 F. Supp. 2d 1302, 1308 (2006).

[11] The Commission adopted its original findings that there is at least a moderate-to-high degree of substitutability between domestically produced brass rod and brass rod from Israel, and that price is an important factor in purchasing decisions for brass rod, along with other important factors such as quality and availability. *Remand Views* at 17-18 & nn.59-60.

price lists to sell brass rod, taking up three pages of the *Remand Views,* and uncontested by Plaintiff. *Remand Views* at 18-20. In addition to finding that price is an important factor in purchasing decisions, the Commission found that the U.S. market for brass rod was price sensitive, and that there was price transparency in the U.S. brass rod market. *Remand Views* at 18.

Specifically, the Commission found that domestic producers Mueller and Wieland sell brass rod based on published price lists, which are frequently revised in light of market developments, including changes in raw material costs and lost sales to lower-priced competitors. *Remand Views* at 18; *see Original Confidential Views* at 42-43; *Original Public Views* at 32-33. It found that, on average, Mueller and Wieland issued revised price lists [ [redacted] ] during the POI. *Remand Views* at 18. The Commission noted that representatives of both Mueller and Wieland testified that when domestic producers revise their price lists, prices are updated for all customers receiving the price list. *Remand Views* at 18. The Commission further found that by offering the same prices to all customers receiving their frequently updated price lists, domestic producers competing with low-priced subject imports from Israel for sales to certain customers automatically extended any price concessions made to those customers, whether price reductions or the forgoing of price increases that would otherwise have occurred, to all customers using the price lists. *Remand Views* at 18.

The Commission cited and quoted extensive hearing testimony from industry witnesses about how the published price lists operated, and the importance of these price lists providing a level playing field for their customers. *Remand Views* at 18-20, nn.61-68. For example, Mr. Mitchell from Mueller testified that

> At Mueller, we send our customers an updated price list whenever market conditions or metal pricing warrant a change … Our policy

> is to ensure that our customers are all receiving and using the same price list on any given day. As the saying goes, today's deal is tomorrow's price.
>
> So it's very important for us to issue a price list to provide an even playing field to our customers that are competing with each other. So, when we do that and we have to try and win back that business, the only way we can do it is to lower the price to the entire market.
>
> … So when we make a price change it's on the list … {w}hich goes to all of the customers that use that price list. We don't go and individually discount to that customer to regain the sale. We make a change to the list. And so when we have to make a price change, it changes what we are receiving from every customer that's using that list. …

*Remand Views* at 19 (citing Hearing Tr. at 25, 51, 64 (PR135)). Similarly, Mr. Christie from Wieland testified that "{l}ike Mueller, we issue price lists to our customers on a frequent basis in response to changing market conditions, including base metal costs, conversion costs, and competitive price intelligence…. {T}he updated price list would now apply to all customers using the new price list." *Remand Views* at 19 (citing Hearing Tr. at 31 (PR135)). In addition to the hearing testimony of these industry witnesses, the Commission also relied upon copies of the price lists produced by Mueller and Wieland. *Remand Views* at 18 n.62; *see* Petitioners' Posthearing Brief at Exhs. 6, 7A-7E (CR209).

None of these conditions of competition – substitutability, the importance of price, the price transparency and price sensitivity of the U.S. brass rod market, and the domestic industry's use of frequently revised price lists – are contested by Plaintiff. Moreover, the Commission's findings regarding these conditions of competition are supported by substantial evidence, including the extensive sworn testimony by industry witnesses, and documentary evidence of the price lists. None of this evidence is contested by Plaintiff.

Based on these uncontested findings as to the conditions of competition in the brass rod market, supported by uncontested evidence, the Commission found that these conditions of competition rendered the volume of subject imports from Israel significant by enabling that volume to have significant adverse price effects and a significant adverse impact on the domestic industry. *Remand Views* at 24-25.

Specifically, based on these conditions of competition, the Commission found that "seemingly small" volumes of sales lost by the domestic industry to low-priced subject imports from Israel led to a market share shift from the domestic industry to subject imports from Israel and suppressed domestic prices to a significant degree by forcing domestic producers to revise their price lists by cutting prices, or forgoing needed price increases, to all customers using the price lists, thereby reducing the domestic industry's revenues. *Remand Views* at 25; *see Original Confidential Views* at 63-65; *Original Public Views* at 48-49. By suppressing domestic prices to a significant degree and taking sales and market share from the domestic industry, the Commission found, subject imports from Israel prevented the domestic industry from capitalizing on increased apparent U.S. consumption during the POI, causing the industry's U.S. shipments to increase at a lower rate than apparent U.S. consumption, and causing its operating income, operating income margin, and market share to decline while its ratio of cost of goods sold to net sales increased. *Remand Views* at 25; *see Original Confidential Views* at 74-75; *Original Public Views* at 55-56. Thus, the Commission found that the volume of subject imports from Israel was significant, in absolute terms and relative to consumption in the United States, and that the increase in that volume was significant, based on Plaintiff's first proposed dictionary definition of the term, because they were in fact "having or likely to have influence or effect"

given their significant adverse price effects and adverse impact on the domestic industry. *Remand Views* at 23; *see* Plaintiff's Remand Comments at 3-4 (CR241).

### B. Plaintiff's Arguments Are Without Merit

#### 1. The Commission Considered Supply and Demand Conditions

While the Commission considered the relevant conditions of competition in detail, Plaintiff argues that the Commission failed to consider certain supply and demand conditions that Plaintiff deems most important, including various comparisons that in its view show that the volume of subject imports from Israel was not significant. Plaintiff's Resp. at 10-17. To the contrary, the Commission considered supply and demand conditions in its *Remand Views*, adopting the extensive discussion of them from the Original Views by reference. *Remand Views* at 8, 17; *see Original Confidential Views* at 28-35; *Original Public Views* at 23-27. Plaintiff improperly asks this Court to reweigh the evidence of conditions of competition considered by the Commission.

Plaintiff also seeks to relitigate the Commission's findings in the Original Determinations that were upheld by this Court. Plaintiff's Resp. at 13-14. The Commission specifically addressed the particular supply conditions raised by Plaintiff, alleged domestic industry supply constraints as result of COVID-19 or a fire at a domestic producer's plant, which allegedly left the domestic industry unable to fully supply the U.S. market. *Id.* As noted in the Commission's *Remand Views*, Plaintiff urged the Commission to revisit several issues on which the Commission's analysis in the Original Determinations had been sustained by this Court, including whether the increase in subject imports was caused by alleged supply constraints.

*Remand Views* at 23-24 n.80 (citing Plaintiff's Remand Comments at 8-9 (CR241R). This Court had affirmed the Commission's consideration and rejection in the Original Determinations of exactly the same arguments regarding alleged supply constraints made by Israeli respondent Finkelstein and now repeated by Plaintiff. As the Court explained, "the Commission sufficiently addressed significant arguments about the impact of supply constraints, or lack thereof, on the domestic industry. … As part of this discussion, the Commission directly addressed, and dismissed, arguments regarding domestic producers' inability to meet domestic demand increase." Slip Op. at 30 (citations omitted). Thus, the Commission appropriately declined to revisit this issue on which it had been affirmed by this Court. *Remand Views* at 23-24 n.80 (quoting Slip Op. at 30, and citing *Original Confidential Views* at 75-77 & n.299; *Original Public Views* at 56-57 & n.299).

Furthermore, despite Plaintiff's assertion that "{t}he Commission should also have examined the market share data for U.S. shipments of subject imports from Israel," Plaintiff's Resp. at 15, the Commission did in fact expressly consider U.S. shipments of subject imports from Israel as a share of apparent U.S. consumption, *Remand Views* at 16-17, thereby considering U.S. demand for brass rod relative to subject imports from Israel. *See* Plaintiff's Resp. at 15.

In its Response to the *Remand Views*, Plaintiff directly compares the market share of subject imports from Israel to the three percent threshold for imports from a country to be considered negligible, arguing that this comparison shows that the volume of subject imports from Israel is not significant. Plaintiff's Resp. at 16, 19. However, the Commission's analysis of negligibility under 19 U.S.C. § 1677(24) is separate and completely unrelated to its consideration of the significance of subject import volume under 19 U.S.C. § 1677(7)(C)(i). Indeed, the

negligibility threshold could shed no light on the significance of subject import volume relative to the consumption in the United States given the different denominators for the two calculations. By statute, negligibility is determined as a percentage of *total U.S. imports* of the product during the relevant 12-month negligibility period, 19 U.S.C. § 1677(24), while market share is determined as a percentage of *apparent U.S. consumption*. As part of its investigations, the Commission was required by statute to determine whether subject imports from Israel and the other subject sources were negligible.

Plaintiff fails to point out that the Commission in fact found that subject imports from Israel accounted for [ [redacted] ] percent of total imports during the relevant 12-month period prior to the filing of the petitions (April 2022-March 2023), a [ [redacted] ] percentage than that of imports from any of the other five subject countries and [ [redacted] ] above the three percent threshold, and accordingly it determined that subject imports from Israel were not negligible. *Original Confidential Views* at 15-16; *Original Public Views* at 11-13. Thus, Plaintiff's references to the three percent statutory negligibility standard provide no support for its argument that the volume of subject imports from Israel was not significant. To the contrary, if relevant at all, the fact that the volume of subject imports from Israel was more than [ [redacted] ] than the negligibility threshold during the relevant period only bolsters the finding that this volume was significant.

Plaintiff argues that the increase in the market share of subject imports from Israel during the period of investigation was small and not significant, Plaintiff's Resp. at 15-16, without acknowledging that the Commission did not make any finding that the increase in the volume of subject imports from Israel was significant relative to apparent U.S. consumption. *See Remand Views* at 16. It is well settled that the Commission need not find subject import volume

significant with respect to all six statutory criteria to find the volume of subject imports to be significant. *Hynix Semiconductor, Inc. v. United States*, 30 CIT 1208, 1212; 431 F. Supp. 2d 1302, 1308 (2006); *see Copperweld Corp. v. United States*, 12 CIT 148, 167; 682 F. Supp. 552, 570 (1988) (finding that the statute's disjunctive language indicates a broad Congressional intent to give the Commission broad discretion to analyze import volume in the context of the industry concerned). Thus, Plaintiff's arguments as to a finding that the Commission did not make are irrelevant to the reasonableness of the volume findings the Commission made.

Plaintiff cites several past Commission determinations in which the Commission found that the volume of subject imports was not significant, likening this case to those past determinations. Plaintiff's Resp. at 16-17.[12] However, as courts have recognized, the Commission is in no way bound by its past determinations because each investigation is *sui generis* and based on its own unique set of myriad facts. *Nucor Corp. v. United States*, 414 F.3d 1331, 1340 (Fed. Cir. 2005). Indeed, this Court's decision in this case acknowledged the "*sui generis* nature of Commission investigations." Slip Op. at 15 n.6. Moreover, as the Commission observed, unlike the current investigations, in which the Commission found that subject imports from Israel had adverse price effects and an adverse impact on the domestic industry and this Court upheld those findings, in none of these past investigation did the Commission find that subject imports had adverse price effects or an adverse impact on the domestic industry. *See*

[12] *See Certain Carbon Steel Butt-Weld Pipe-Fittings from France, India, Israel, Malaysia, the Republic of Korea, Thailand, the United Kingdom, and Venezuela*, Inv. Nos. 701-TA-360 and 361 and 731-TA-688-695 (Final), USITC Pub. 2870 (Apr. 1995); *Glass Containers from China,* Inv. No. 701-TA-630 (Final), USITC Pub. 5068 (June 2020); *Silica Bricks and Shapes from China*, Inv. No. 731-TA-1205 (Final), USITC Pub. 4443 (Jan. 2014); *Ball Bearings from Chin*a, Inv. No. 701-TA-989 (Final), USITC Pub. 3593 (Apr. 2003).

*Remand Views* at 23 n.78. Thus, the past Commission determinations cited by Plaintiff are irrelevant to this case.

**2. The Commission's Remand Views Give Meaning to the Term "Significant"**

Plaintiff argues that the Commission's remand determination "fails to give meaning to the statutory term 'significant.'" Plaintiff's Resp. at 21-22. However, Plaintiff itself argued in its Remand Comments that the primary dictionary definition of "significant" is "having or likely to have influence or effect, Plaintiff's Remand Comments at 3 (CR241R), and the Commission found that definition relevant to its assessment of the significance of the volume of subject imports from Israel in its *Remand Views*. *Remand Views* at 12, 23. Plaintiff's argument that the Commission's Remand Views fail to give meaning to the term "significant" makes no mention of the definition specifically advocated by Plaintiff just two months before and then adopted by the Commission.

In the Commission's Original Determinations, the Commission found that subject imports from Israel had significant adverse price effects and a significant impact on the domestic industry*, Original Confidential Views* at 66, 82; *Original Public Views* at 50, 61, and this Court upheld those findings. Slip Op. at 24, 28. In the *Remand Views*, the Commission specifically found that the volume of subject imports from Israel was significant in the context of the relevant conditions of competition because those conditions of competition enabled that volume to have adverse price effects and a significant adverse impact on the domestic industry. *Remand Views* at 25.

The Commission explained:

> Specifically, based on these conditions of competition, the Commission found that seemingly small volumes of sales lost to low-priced subject imports from Israel led to a market share shift and suppressed domestic prices to a significant degree by forcing

> domestic producers to revise their price lists by cutting prices or forgoing needed price increases to all customers using the price lists, thereby reducing the industry's revenues. By suppressing domestic prices to a significant degree and taking sales and market share from the domestic industry, the Commission found, subject imports from Israel prevented the domestic industry from capitalizing on increased apparent U.S. consumption, causing the industry's U.S. shipments to increase at a lower rate than apparent U.S. consumption, and causing its operating income, operating income margin, and market share to decline while its ratio of cost of goods sold to net sales increased.

*Remand Views* at 25 (footnotes omitted); *see Original Confidential Views* at 63-65; *Original Public Views* at 48-49. Thus, the Commission concluded that the volume of subject imports from Israel was significant in that it was sufficient to cause adverse price effects and a significant adverse impact on the domestic industry, consistent with the dictionary definition – "having or likely to have influence or effect." *Remand Views* at 23.

Nor is there anything "circular" about the Commission's reasoning in this regard, as Plaintiff asserts, because the Commission's price effects and impact findings were not dependent on its volume findings. Plaintiff's Resp. at 19-21. As noted, while remanding the Commission's volume findings, this Court upheld the Commission's price effects and impact findings. Specifically, the Court found that the Commission's pricing analysis was supported by substantial evidence, finding that the price-based adjustment that the Commission used in its analysis of underselling by subject imports from Israel was supported by substantial evidence. Slip Op. at 18-21. Similarly, it found that the Commission's finding that subject imports from Israel caused negative price effects was supported by substantial evidence. *Id.* at 21-24. In addition, the Court found that the Commission's finding that subject imports from Israel had a negative impact on the domestic industry was supported by substantial evidence. *Id.* at 25-28. Finally, it found that the Commission's non-attribution analysis and the Commission's finding

that the domestic industry was materially injured by reason of subject imports from Israel were supported by substantial evidence. Id. at 28-31. Had the Commission's price effects and impact findings been dependent on the Commission's finding of significant volume, as Plaintiff mistakenly argues, Plaintiff's Resp. at 19-21, the Court would not have affirmed those findings after holding the Commission's volume findings deficient. *See* Slip Op. at 18-28.

Indeed, Plaintiff's arguments that the volume of subject imports from Israel was too small to have significant price effects and a significant impact on the domestic industry, Plaintiff's Resp. at 20, were raised by respondent Finkelstein made during the original investigations and rejected by the Commission in findings affirmed by this Court. In upholding the Commission's price effects analysis, the Court found that the Commission reasonably rejected Finkelstein's argument that the volume of any lost sales due to underselling was too small to have suppressed domestic prices, affirming the Commission's findings that the price transparency and price sensitivity of the U.S. brass rod market forced domestic producers reporting sales lost to subject imports from Israel to revise their price lists by either cutting prices or forgoing needed price increases to avoid further lost sales, affecting domestic producers' revenues from sales to all customers using the price lists. Slip Op. at 23-24 (citing *Original Public Views* at 48-50; *Original Confidential Views* at 63-66).

Plaintiff further argues that the Commission must somehow specify a particular threshold that the volume of subject imports from Israel must exceed in order to be "significant," providing no authority for this proposition, and ignoring authorities to the contrary. Plaintiff's Resp. at 22. Contrary to Plaintiff's argument, it is well settled that there is no minimum threshold for import volumes to be found significant. As the Court has explained,

> {T}here is no minimum rate of increase in subject import volume or a baseline percentage of market share for subject imports, above

> which volume will be considered "significant." Congress has specified that "for one industry, an apparently small volume of imports may have a significant impact on the market, for another the same volume may not be significant."

*Nippon Steel*, 25 CIT at 1419-20; 182 F. Supp. 2d at 1335 (quoting H.R. Rep. 96-317 at 46); *Hynix Semiconductor Inc*., 30 CIT at 1212-13; 431 F. Supp. 2d at 1308. Moreover, this Court noted that "the statute does not define the term 'significant,' nor does it impose a minimum threshold for a finding that subject imports are significant." Slip. Op. at 17-18. Thus, this Court should reject Plaintiff's effort to rewrite the statute to require the Commission to specify a threshold for finding the volume of subject imports to be significant.

**3. The Commission Considered the Conditions of Competition in Accordance with the Remand Instructions**

In its *Remand Views*, the Commission observed as a general matter that the "statute does not require the Commission to consider the significance of subject import volume in the context of competition, as that requirement applies only to the Commission's consideration of impact," contrasting the wording of the volume provision of the statute (19 U.S.C. § 1677(7)(C)(i)) with that of the impact provision (19 U.S.C. § 1677(7)(C)(iii)), and citing two recent decisions of this Court holding this. *Remand Views* at 15 & n.49. *See Seafood Exporters Ass'n of India v. United States,* No. 25-00031, Slip Op. 26-106 at 17-19, 2026 WL 2629941 at *6-7 (Ct. Int'l Trade Sept 4, 2026); *Tenaris Bay City, Inc. v. United States*, 789 F. Supp. 3d 1352, 1373 (Ct. Int'l Trade 2025), *appeal pending,* No. 2025-2034 (Fed. Cir. filed_ Aug. 20, 2025). However, the Commission's *Remand Views* acknowledged and did not dispute this Court's remand instructions requiring a fuller explanation for the Commission's finding that the volume of subject imports from Israel was significant, taking into account the relevant conditions of competition, "particularly when such imports represented a small percentage of the market share relative to that held by the domestic industry." *Remand Views* at 15 (quoting Slip. Op. at 17). That the

statute does not require the Commission to consider the significance of subject import volume in the context of conditions of competition in every case does not mean that an explanation of relevant conditions of competition is not sometimes relevant to the Commission's volume analysis, as the Court held in this case. Indeed, as explained above, the Commission complied fully with the Court's remand instructions by considering the significance of the volume of subject imports from Israel in the context of the conditions of competition in the U.S. brass rod market. Thus, Plaintiff's assertion that the Commission claimed "that it was not required to conduct the analysis ordered by the Court," Plaintiff's Resp. at 1, ignores the Commission's actual analysis in compliance with the Court's remand instructions and mischaracterizes the Commission's observations based on the statute and caselaw.

Without addressing the actual statutory language or caselaw discussed by the Commission in the *Remand Views*, Plaintiff now argues, unpersuasively, that the Commission is required in all cases to address the relevant conditions of competition in considering the significance of subject import volume. Plaintiff's Resp. at 8-9. Just because the Commission may sometimes examine conditions of competition in its volume analysis where the statute does not direct it to do so does not establish a "standard practice" that the Commission cannot deviate from without explanation. The Commission has no "standard practice" with respect to considering the conditions of competition in contexts other than its analysis of the impact of subject imports, where doing so is required by statute, and Plaintiff cites only one past Commission investigation to demonstrate this alleged "standard practice." *See id.*[13] Nor does

[13] An action by the Commission becomes an agency practice when a uniform and established procedure exists that would lead a party, in the absence of notification of change, reasonably to expect adherence to the established practice or procedure. *Hitachi Metals*, 350 F. Supp. 3d. at 1334, *aff'd*, 949 F.3d 710, 718 (Fed. Cir. 2020). Plaintiff's citation of a single past

the substantial evidence standard, by itself, require the Commission to consider whether import volumes are significant in the context of the conditions of competition, as Plaintiff asserts. *Id.* at 9. The Court of International Trade has sustained the Commission's volume analysis in past cases absent such a consideration. *See, e.g., Tenaris Bay City,* 789 F. Supp. 3d at 1372-75.

The issue before this Court is whether the Commission's Remand Determination is supported by substantial evidence and in compliance with the Court's remand instructions in this case, not whether the Commission is required to consider the conditions of competition in its volume analysis in every case notwithstanding the language of the statute. Thus, this Court should uphold the Commission's Remand Determination and ignore Plaintiff's unsupported arguments regarding conditions of competition in other contexts.

## V. CONCLUSION

For all these reasons, the Commission's affirmative remand determinations are supported by substantial evidence and in accordance with law. The Court should therefore affirm them.

Respectfully submitted,

/s/ *Margaret D. Macdonald*
Margaret D. Macdonald
General Counsel

/s/ *Karl von Schriltz*
Karl von Schriltz
Assistant General Counsel for Litigation
Telephone: (202) 205-3096
karl.von-schriltz@usitc.gov

---

Commission investigation hardly demonstrates the adoption by the Commission of any such claimed practice.

*s/ John D. Henderson*
John D. Henderson
Attorney-Advisor
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Telephone: (202) 205-2130
Facsimile: (202) 205-3111
john.henderson@usitc.gov

Date: November 12, 2026

**CERTIFICATE OF COMPLIANCE**

Pursuant to Chambers Procedures 2(B)(1) and (2), I hereby certify that the attached **DEFENDANT U.S. INTERNATIONAL TRADE COMMISSION'S NONCONFIDENTIAL COMMENTS IN SUPPORT OF REMAND DETERMINATIONS** contains 8,431 words, according to the word-count function of the word processing system used to prepare this brief (Microsoft Word 2010).

*/s/ John D. Henderson*
John D. Henderson
Attorney-Advisor
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Telephone: (202) 205-2130
Facsimile: (202) 205-3111
john.henderson@usitc.gov

Dated: November 12, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 12th day of November 2026, I provided true and correct electronic copies of the foregoing **DEFENDANT U.S. INTERNATIONAL TRADE COMMISSION'S NONCONFIDENTIAL COMMENTS IN SUPPORT OF REMAND DETERMINATIONS** to all counsel of record via the Commission's secure file transfer system, according to counsels' written consent.

*/s/ John D. Henderson*
John D. Henderson
Attorney-Advisor
Office of the General Counsel
U.S. International Trade Commission
Telephone: (202) 205-2130
Facsimile: (202) 205-3111
john.henderson@usitc.gov